251 S.W.2d 645 (1952)
JOHNSON
v.
THOMPSON.
No. 42879.
Supreme Court of Missouri, Division No. 2.
October 13, 1952.
*646 T. J. Cole, St. Louis, E. A. Barbour, Jr., Springfield, for appellant.
Jo B. Gardner, Monett, for respondent.
BARRETT, Commissioner.
In this action for damages for breach of a railroad union contract in discharging F. S. Johnson, a conductor, without good and sufficient cause the plaintiff has recovered a judgment of $8,109.82 against the trustee of the Missouri Pacific Railway Company. Mr. Johnson died on September 1, 1949, unexpectedly, during the pendency of his action and the cause was continued by his wife as the administratrix of his estate.
The specific grounds of Mr. Johnson's discharge, as alleged in his petition, were for violation of "Rules G-700-703" on June 12, 1948, while reporting for duty as a conductor on one of the appellant's passenger trains. Rules 700 and 703 are rather general rules of conduct requiring employees to be alert at all times and to "devote themselves exclusively to the service." Among other things "Constant presence of mind to insure safety to themselves and others, is the primary duty of all employees" and they "are prohibited from using their time while off duty in a manner that may unfit them for the safe, prompt and efficient performance of their respective duties for the railroad." Rule G is as follows: "The use of intoxicants or narcotics is prohibited." The railroad's evidence was that when Mr. Johnson reported for duty as a conductor on June 12, 1948, and after he had entered upon the performance of his duties, he was drunk. The trainmaster and the assistant superintendent of the division testified that Mr. Johnson was unsteady when he walked, staggered and weaved, that he talked unnaturally for him, that there was a strong odor of whiskey upon his breath and that he was intoxicated. It was for this reason that he was relieved and, after investigation, discharged from the service for violation of Rules G, 700 and 703.
Preliminary to the essential question presented respondent's counsel argue, as is the fact, that discipline, in general is necessarily administered under Articles 54 and 55 of the contract. Article 54 provides that a conductor "may be discharged from the service of the Company for good and *647 sufficient causes." Because this language is followed by the sentence "These causes shall include intemperance, incompetency, habitual neglect of duty, gross violation of rules or orders, dishonesty or insubordination" the respondent invokes the maxim, "the express mention of one thing implies the exclusion of another," (Broom's Legal Maxims, p. 504) and contends that the "defendant was limited to the specific grounds in dismissing the deceased." Being so limited, as we understand the contention of counsel, it is said that the railroad is limited in its rights under the contract to discharge an employee, here the conductor, to proof of intemperance and that violation of Rule G, "use of intoxicants * * * is prohibited," is not a ground for discharge but only for suspension for a reasonable length of time. We do not so interpret the contract and the auxiliary rule of construction, "The expression of one thing is the exclusion of another" (Black, Law Dictionary), if applicable, does not bring about the construction claimed. The maxim has to do with ascertaining "the intention of the party as discoverable upon the face of the instrument" (Broom's Legal Maxims, p. 506) and is sometimes stated "The express declaration puts to an end anything which silence might signify." Ballentine, Law Dictionary; 17 C.J.S., Contracts, § 312, p. 730. Rule G is likewise a plain, unequivocal, positive statement, "the use of intoxicants * * * is prohibited," expressly mentioned in the contract, and is not impliedly or otherwise excluded as a ground of discharge if it meets the general requirements of Article 54, and here Rules 700 and 703. There was no claim or evidence of intemperance and, as the court of appeals ruled on the former appeal, intemperance was not an issue in the case and the respondent was not entitled to a directed verdict for this reason. Johnson v. Thompson, Mo.App. 236 S.W.2d 1, 11.
As to the second ground of wrongful discharge alleged in the petition, "without a fair and impartial trial" (Article 55), before the railroad officials, there is no evidence of probative force to support the charge and the trial court did not err in refusing to charge the jury upon this subject. Mr. Johnson was represented at the investigation by the general chairman of his railroad union. In the investigation there was no objection and no evidence that he was not being given a fair hearing. The official who conducted the investigation, another trainmaster, had the right to recommend punishment but he had no power to discharge Mr. Johnson. When Mr. Johnson failed to appear after the investigation had been set within the required five days this official displayed some pique, but that does not prove that Mr. Johnson did not have a fair and impartial hearing. Upon the basis of the investigation and recommendation Mr. Johnson was discharged by the superintendent and he did not appeal or ask for a hearing before other officials of the railroad as he had a right to do under the contract. In these circumstances there was no evidence tending to show that he did not have a fair and impartial hearing and the trial court did not err in refusing to submit this issue to the jury. Craig v. Thompson, Mo.Sup., 244 S.W.2d 37. The meritorious question is whether he was discharged for "good and sufficient causes" (Article 54) under the contract.
Upon this essentially meritorious question, Mr. Johnson's discharge for violation of Rules G, 700 and 703, the appellant contends that there is no evidence of probative force that Mr. Johnson was wrongfully discharged and therefore the appellant was entitled to a directed verdict. As we have said, the railroad's claim and evidence was that Mr. Johnson reported for duty and entered upon the performance of his duties while drunk and such conduct, if found, was certainly a "gross violation of rules" (Article 54) and ground for discharge under the contract. The respondent's claim was that her husband was not intoxicated on June 12th and therefore the railroad wrongfully discharged him. In addition to her claim that he was not intoxicated she also claimed that he had had neither the opportunity nor the time in which to become intoxicated on the occasion of his reporting for duty as a conductor on June 12, 1948. Mr. Johnson *648 was sixty-one years of age when he was discharged and had been employed by the railroad since 1924. About ten months prior to his discharge he had received a slight injury to his head for which he was hospitalized and observed for three days. Mrs. Johnson and the general chairman, who had known and worked with him for years, testified that after the injury he was often dizzy and sometimes walked unsteadily and that he often took empirin and aspirin to relieve his pain. Leaving time for his passenger train on June 12th was 1:52 and under the rules he was to have reported for duty at 1:22, thirty minutes prior to leaving time. The trainmaster first saw him on the train at 12:45 and according to the trainmaster Mr. Johnson was then drunk. Mrs. Johnson said that her husband was not feeling well that morning when he got up, did not eat breakfast, and she gave him aspirin or empirin. For lunch he ate a sandwich and about twelve o'clock left his home in Kennett Place for the St. Louis Union Depot. Mrs. Johnson said that there was no whiskey, wine, beer or other intoxicants in the house on that day and that Mr. Johnson had not had a drink of liquor of any kind when he left home at twelve o'clock. After he arrived at the station it was necessary for him to change clothes, put on his uniform, before reporting for duty. Appellant urges that all of her evidence is of a "negative nature" and is not positive evidence that he had not used intoxicants before leaving home and before the trainmaster first saw him at 12:45. But Mrs. Johnson's positive testimony that he had not had a drink and was not intoxicated when he left home at twelve o'clock is not all negative in character. He had to make the trip to the station and change to his uniform. He was first seen by the trainmaster at 12:45. There was no other evidence by either the plaintiff or the defendant as to where he had been or what he had done and, in these circumstances, it may not be judicially said that Mr. Johnson could get drunk in forty-five minutes or if he could that he did so on this occasion. The plaintiff's evidence as to his physical condition tended to account for his actions, Mrs. Johnson said that he had not had a drink at twelve o'clock and the circumstantial evidence is of such probative force that the jury could reasonably draw the inference that there was neither the time nor the opportunity for him to use intoxicants as claimed. In all the circumstances upon this record his wrongful discharge for violation of Rules G, 700 and 703 was a question of fact for the jury. Wilson v. St. Louis-San Francisco Ry. Co., 362 Mo. 1168, 247 S.W.2d 644; Butner v. Union Pacific R. Co., 236 Mo.App. 1134, 163 S.W.2d 100. Mr. Johnson's violation of the rules was not conceded or admitted as it was in Craig v. Thompson, supra.
In connection with the principal issue the appellant urges that the court tried the case upon an erroneous theory, as indicated by the giving and refusal of instructions, that violation of Rule G alone, "use of intoxicants," was not a justifiable ground of discharge unless it was also shown that Mr. Johnson had used intoxicants at the time and "was thereby unfit for service as a conductor on appellant's train, and that under the contract it would take such an act and condition before a violation of Rule G would be a gross violation (of rules or orders) (Article 54) and his discharge by the appellant justifiable." It is not apparent from the record that the trial court forced this view upon the parties. From the beginning it is obvious that the railroad did not rely alone upon a mere technical or slight infraction of Rule G as a sufficient ground of discharge, the official notice specified Rules G and 700 and 703. All the railroad's evidence was directed to the proposition that Mr. Johnson was drunk and the witnesses, the trainmaster and the assistant superintendent, expressed the opinion, by reason of his conduct and condition that he "was unfit to carry out the duties of a conductor." The appellant's refused instruction on this subject cryptically hypothesized that Mr. Johnson "shortly prior to reporting for or performing the duties as a conductor on defendant's train No. 15, had violated Rule `G', described in evidence and was discharged by reason and on account thereof." If a mere technical infraction of the *649 rule, using intoxicants in any manner or in any degree, even taking one drink, is a sufficient ground for discharge, the rejected instruction was not a proper hypothesis of the matter sought to be submitted and the court was justified in refusing the instruction for this reason. This record does not compel the decision that any infraction whatever of Rule G is a "good and sufficient cause" (Article 54) in and of itself for discharging a conductor, the railroad did not so interpret the rule and the investigation, the discharge and this trial were upon the theory that he had not merely used intoxicants but that he was intoxicated and thereby unfit to perform his duties, a "gross violation of rules or orders" and "a good and sufficient cause" for discharge, all plainly within the meaning of Article 54 and Rules G, 700 and 703. Butner v. Union Pacific R. Co., 236 Mo.App., loc. cit. 1144, 1146, 163 S.W.2d, loc. cit. 105, 106; Craig v. Thompson, supra; Johnson v. Thompson, supra.
In the principal instruction hypothesizing the defendant's liability the instruction concludes "You are further instructed that defendant has the burden of proving by the greater weight or preponderance of the credible evidence that the deceased F. S. Johnson had so used intoxicants and was unfit for service in violation of defendant's Rule G, mentioned in evidence, and if defendant has failed in sustaining that burden, or you find the weight of the credible evidence is evenly balanced between plaintiff and defendant, then your verdict should be for plaintiff and against defendant." The appellant now urges that the giving of this instruction was prejudicially erroneous for the reason that it improperly placed the burden of proof upon the defendant as this court held in Craig v. Thompson in November 1951. The respondent contends, since this case was tried in May 1951, prior to the decision of the Craig case, that the opinion upon the former appeal in Johnson v. Thompson became and remained the law of the case even though expressly overruled on this specific point and that the trial court could not be convicted of error in giving the instruction. The respondent does not cite any authorities to support her view and the rule is to the contrary, this court is not precluded by the prior opinion of the court of appeals. Harke v. Haase, 335 Mo. 1104, 1112, 75 S.W.2d 1001, 1005; Lober v. Kansas City, 339 Mo. 1087, 100 S.W.2d 267; Keele v. Atchison, T. & S. F. Ry. Co., 258 Mo. 62, 81-82, 167 S.W. 433. The respondent urges, if her first argument is not applicable, that the case falls within the exception, or more accurately, the distinction noted in the Craig case, "cases involving a contract for a definite term." Craig v. Thompson, 244 S.W.2d, loc. cit. 42. The contention is that since Mr. Johnson died on September 1, 1949 the case has, in effect, become "exactly the same as if the contract of employment had read that Conductor Johnson was to be employed until September 1, 1949," a contract for a definite period of time and therefore the burden was upon the employer to prove that the discharge before the expiration of the term was for good cause. Haxton v. Gilsonite Const. Co., 134 Mo.App. 360, 114 S.W. 577. But that was not the contract and subsequent events do not change it, so far as appears from the record the contract was for an indefinite period of time, Jenkins v. Thompson, Mo. Sup., 251 S.W.2d 325, and he could only be discharged after a hearing and for good and sufficient causes. As was expressly ruled in Craig v. Thompson the instruction was prejudicially erroneous and for that reason the judgment is reversed and the cause remanded.
WESTHUES and BOHLING, CC., concur.
PER CURIAM.
The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.
ELLISON, J., and LEEDY, P. J., concur.
TIPTON, J., concurs in result.