**Patrick J. MASH, Appellant,**

v.

**MISSOURI PACIFIC RAILROAD CO., a Corporation, Respondent.**

No. 47678.

Supreme Court of Missouri,

Division No. 2.

Nov. 14, 1960.

Motion for Rehearing or to Transfer to Court en Banc Denied Jan. 9, 1961.

Jo B. Gardner, Monett, for appellant.

George W. Holmes, Mark M. Hennelly, Allen D. Churchill, St. Louis, for respondent.

LEEDY, Presiding Judge.

Patrick J. Mash appeals from a judgment in favor of defendant upon the verdict of the jury in his action against Missouri Pacific Railroad Company for damages arising out of his discharge from defendant's service as a locomotive fireman and engineer allegedly in violation of the terms of collective bargaining agreements between the railroad and the two labor organizations of which plaintiff was a member, the Brotherhood of Locomotive Engineers and the Brotherhood of Locomotive Firemen and Enginemen. The petition prayed damages of $85,112.10, and as that sum represents the "amount in dispute" for the purpose of fixing appellate jurisdiction, the appeal is properly here.

As the relevant provisions of the two contracts are identical, reference to them will be in the singular, as if constituting one contract. Those provisions are as follows: "No fireman [or engineer, as the case may be] or helper shall be discharged * * * without just or sufficient cause. When * * * charged with an offense which would warrant his suspension or discharge, if sustained, no suspension or discharge shall be inflicted (except suspension pending investigation) without a thorough investigation within five days before the official having jurisdiction, at which time he may have a fireman [or engineer, as the case may be] or helper of his choice assist him in the investigation, who will be permitted to examine witnesses. He or his representative shall be furnished with a copy of the evidence brought out at such investigation, which will be the basis for discipline administered." There are also provisions giving to an employee who is not satisfied with the result of an investigation "the right to appeal his case through the General Chairman to the Assistant General Manager for the district involved, and, if necessary, to the Chief Personnel Officer." There was also in force and effect general rule "G" of the Uniform Code of Operating Rules which provided that "the use of intoxicants or narcotics is prohibited."

The incident giving rise to this action was plaintiff's alleged use of intoxicants while on duty as an engineer on the night of March 1, 1955. An investigation of the charge was timely held on March 5 before the appropriate official of the railroad at which hearing Mash was present in person and by certain brotherhood officers, his representatives. On March 6 he was discharged on the basis of his violation of Rule G on the occasion in question, notified thereof and furnished with a "copy of the investigation." Plaintiff took successive appeals to the Assistant General Manager and to the Chief Personnel Officer, both without avail, and thereafter instituted this action. (Defendant asserts the action was not timely filed, and is barred on that account, a point we do not pass on because we prefer to rest our decision on the merits, under which the same result is reached insofar as defendant is concerned.)

Plaintiff's theory of recovery is that his discharge was wrongful and in violation of the labor contract in that the railroad did not have just or sufficient cause to terminate his employment. That issue was submitted to the jury and found in favor of defendant. To overturn the judgment entered on that verdict, plaintiff on this appeal has sought to assign error in the denial of his motion for a directed verdict in his favor, in the admission of certain evidence, and in the giving and refusal of instructions.

On the night of March 1, 1955, plaintiff was the engineer on defendant's train 72, a northbound through freight, operating between Poplar Bluff, Missouri, and Dupo, Illinois, a distance of 179 miles, on what is known as the Illinois division. It left Poplar Bluff about 7:15 p. m. At Illmo, some 60 miles to the north, one of the two trainmasters on the division in question (Martin) conducted a surprise test with respect to train 72 by causing the tower

operator at the "interlock plant" to display a red signal, which signal would normally change to green, but it did not because the tower operator had been instructed by the trainmaster that the signal be not changed until so directed by him. The train stopped as signaled; the head brakeman went forward toward the tower to investigate; the trainmaster and a special agent (Tinkler) then boarded the engine. In the cab they found the fireman in the engineer's seat and in charge of that part of the train. They found the engineer, Mash, in the middle (or head brakeman's) seat. According to the fireman, he had taken over the operation of the engine, at Mash's request, at Dexter Junction, some 22 miles out of Poplar Bluff, at the beginning of the first of Mash's two absences from the front of the engine to go to the toilet. By his own estimates, Mash was gone for as long as 12 minutes each time.

The trainmaster testified that Mash "looked flush, very surprised to see us there * * * his face was red—ruddy"; that his face appeared different than it had on a previous occasion when the witness had been in very close proximity to plaintiff when interrogating him in the course of conducting a drawbar investigation; that he spoke haltingly, and his appearance was not neat. Mash denied he had been drinking and upon request agreed to, and did, blow his breath into the faces of the trainmaster and the special agent, both of whom testified they smelled alcohol on his breath. He was then asked if he would show what was in his grip, and he said no, he wouldn't do that, that was his personal property. Mash was then left alone in the cab while others searched for liquor in all of the diesel units, but none was found. The trainmaster and the special agent left the engine and went back to confer with the conductor to make the necessary arrangements to move the train. When they returned to the engine, plaintiff allowed them to inspect his grip, but no intoxicants were found therein. After stating to Mash that he had intoxicants on his breath and "wasn't

in condition," the trainmaster relieved him of his duties, and then asked if he wanted to see a doctor, but plaintiff declined. The trainmaster then assisted Mash from the engine and over to the nearby road crossing, crossed two tracks, saw to it that he was safely at the Illmo depot, and arranged transportation home for him via the Cotton Belt, defendant's operation at that point being limited to freight. The trainmaster asked Mash how long the fireman had been operating the engine, and Mash "said the fireman had been operating the engine from Delta" (a point some 30 miles north of Dexter Junction, the latter being the place fixed by Mash on the present trial as the place at which the fireman took over).

Plaintiff testified that shortly after his arrival in Poplar Bluff (on the southbound trip) about 1:20 a. m., on March 1, and before going to bed, he did take two drinks of whiskey of about an ounce each (this being some 20 hours before the surprise test was conducted), but he vigorously denied he had thereafter, and before the Illmo incident, consumed any liquor whatever. Although in a position to have detected it, neither the fireman nor the head brakeman smelled any liquor on plaintiff's breath, nor did the trainmaster at Poplar Bluff or the general foreman, both of whom made an inspection of the engine equipment (and were in the cab) just before 72's departure from Poplar Bluff. On this night plaintiff was smoking a pipe, the odor of which was described by the fireman as being "rather strong." The conductor, fireman and head brakeman testified they saw nothing unusual or out of the way in plaintiff's actions or speech on the night in question, nor in the way in which the train was operated to Illmo. (The fireman and brakeman were charged with a violation of a rule in failing to report Mash's alleged violation of Rule G.) This sufficiently indicates the factual situation for present purposes. If relevant, other facts will be stated in connection with the points to which they relate.

■ The first contention is that to have entitled the defendant to go to the jury on

the issue of just and sufficient cause for discharging plaintiff under Rule G, it was incumbent on it to show that plaintiff was under the influence of intoxicants and (in consequence thereof) unfit for service. Such seems to have been the holding of the case upon which plaintiff relies, that of the Springfield Court of Appeals in Johnson v. Thompson, 241 Mo.App. 1008, 1025, 236 S. W.2d 1, 11, which case involved not only a violation of the present defendant's Rule G, but also two others. But in Craig v. Thompson, Mo., 244 S.W.2d 37 (a case comparable with the one at bar as regards the state of the pleadings), this court, en banc, expressly overruled that portion of the Johnson case, supra, which held that the burden of proof was upon the defendant to show that the discharge was for good and sufficient cause. It was there said (loc. cit. 42): "Defendant may content himself and offer no proof at all. If he desires defendant may make proof that the discharge was in fact justified. But the burden of proving the very thing that gives rise to his cause of action, the heart of his cause of action, i. e., that the discharge was wrongful remains always upon the plaintiff." Seizing upon this language, "This record does not compel the decision that any infraction whatever of Rule G is a 'good and sufficient cause' * * * in and of itself for discharging a conductor" (Johnson v. Thompson, Mo., 251 S.W.2d 645, 649—second appeal), the plaintiff contends that "if defendant argues * * * that one sip is sufficient," such an interpretation of the rule would be arbitrary, unreasonable and violative of the contract protection to which plaintiff is entitled on the issue of just and reasonable cause for discharge, and in consequence he would be entitled to a directed verdict. We do not pause to examine this contention for the reason that the contingency upon which it was made does not arise on this record; that is, the evidence did not show that plaintiff had taken just one sip, nor did defendant so contend. Plaintiff denied he had taken any, whereas defendant's proof would have warranted the finding that plaintiff was under the influence of an intoxicant to some noticeable degree. Consequently, plaintiff's motion for a directed verdict in his favor (which assigned as the reason therefor that "under the law and evidence there is no issue of fact for the jury to determine") was properly denied.

■ The court permitted plaintiff to be cross-examined as to the physical surroundings of, and the manner of conducting a priorly held investigation into what was referred to as a drawbar incident involving plaintiff, and this action is assigned as error. In substance, the inquiry went to the question of whether Martin, the trainmaster (who relieved plaintiff at Illmo) had had an opportunity in the course of his questioning of plaintiff at the previous investigation to observe him at close range. (The trainmaster was new in the territory, and plaintiff claimed he had never seen him before the Illmo incident, thus implying want of ability on the part of the trainman to make comparisons between plaintiff's appearance on the night in question and any previous occasion.) Plaintiff stood by his guns under the cross-examination objected to, and insisted he did not "remember Mr. Martin being in on any [previous] investigation." The subject matter of the investigation was not developed other than to identify it as being one involving a drawbar. We doubt whether it could fairly be inferred that plaintiff himself was even charged with a rule violation in that connection. Certainly there was not the slightest emphasis placed on the nature of the investigation, and taking plaintiff at his word (that there had been no confrontation at that time), this bit of cross-examination merely confirmed his position that he had never seen Martin before, and therefore was not prejudicial.

■ It was developed on cross-examination of plaintiff's witness Talley, the conductor, that on the occasion in question, when told by the trainmaster (at the scene, but out of plaintiff's presence) that he, the trainmaster, had stopped the train and was

relieving engineer Mash from service, the witness replied or remarked, "I had been expecting this," or words to that effect. The complaint against the admission of this statement is that "it was hearsay, and since the plaintiff wasn't present, could not be binding on him." The remark was not offered to prove the truth of the matter asserted therein, but on the contrary was offered as circumstantially indicating or bearing upon the reasonableness of the trainmaster's action in conducting the surprise test. It was plaintiff's theory, and his counsel vehemently argued, that there was a conspiracy from the top echelon to the bottom to get Patrick Mash out of the Missouri Pacific Railroad and keep him out, regardless of what the facts were, in furtherance of which some undisclosed order had gone out from the superintendent's office to the trainmaster about the test which was made only after the trainmaster found Mash was the engineer on the train; that "the trainmaster made up his mind before he even had the red block thrown he was going to get Mash" that night, etc.

"The essence of the Hearsay rule is the distinction between the testimonial (or assertive) use of human utterances and their nontestimonial use.

■ "The theory of the Hearsay rule (ante, § 1361) is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but without reference to the truth of the matter asserted, the Hearsay rule does not apply. The utterance is then merely not obnoxious to that rule. It may or may not be received, according as it has any relevancy in the case; but if it is not received, this is in no way due to the Hearsay rule." Wigmore on Evidence, § 1766; In re Thomasson's Estate, 347 Mo. 748, 758, 148 S.W.2d 757, 763.

Under this principle, and considering the purpose for which the statement was offered, its admissibility was governed not by whether it was hearsay, but by whether it had any relevancy in the case. Consequently, the hearsay objection was not well taken, and it not having been objected to on the ground of want of relevancy, we are not called upon to decide whether it was or was not relevant.

■ Plaintiff argues that he could not examine the witness on redirect examination concerning this statement, or even ask him what he meant by it, without waiving the union contract provision (that discipline is to be administered on the basis of the evidence brought out at the investigation); that for him to have done so would have " 'opened the door' to a possible floodgate of other matters which certainly may have occurred in the forty-odd years of plaintiff's service." He cites 64 C.J., § 1176, pp. 1292, 1293, wherein we find nothing even remotely supporting the contention. On the contrary, if any of it is applicable, the most likely is that part as follows: "On the other hand, it has been held that reexamination by plaintiff of a witness on matters elicited on cross-examination by defendant over plaintiff's objection does not waive all objections made to the relevancy of the cross-examination." The modern and current edition of that text, 89 C.J.S. Trial § 661, p. 508, uses the same language. In view of the evidence in the case, we fail to appreciate why the same result would not have followed had the remark been rejected, so that, in any event, there was no abuse of the trial court's discretion as to the scope and extent of cross-examination.

■ Complaint is made as to two matters developed on defendant's cross-examination of a brotherhood official concerning his knowledge as to time limits governing the filing of claims under the contract, and also concerning certain of his duties and activities under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., while acting for plaintiff in connection with the latter's ad-

ministrative appeals. Neither space nor the nature of the supposed errors justify our doing anything more than to say that the subjects he now contends were not permissible were opened up by him on direct examination, and hence he is in no position to complain.

■ Somewhat the same general considerations apply to the assignment charging error in the reception of defendant's Exhibit "L", a letter from the trainmaster (Brenton) to the Superintendent, in the nature of a report upon the investigation in question which was held before him a few days following the Illmo incident. The fact that this letter even existed seems to have been brought out by plaintiff's counsel in his cross-examination of the defendant's superintendent, during the course of which he demanded that the letter be produced and wanted to know if it had not "criticized Mr. Mash for not permitting the search of his grip." (Defendant's counsel objected, but stated that "if the instrument is going to be introduced then I have no objection.") Pending its production, plaintiff's counsel proceeded to elicit the fact that Brenton had conveyed to the witness orally his feeling "that the testimony of the two officials [Martin and Tinkler] and also Mr. Mash was sufficient in his opinion to warrant [Mash's] dismissal, and that he didn't think the testimony was conclusive or developed sufficient evidence to assess discipline to the other members of the crew." These statements (in practically the same language) appear in the letter, plus the writer's reasons for so concluding. It appears that it is the statement of the reasons for such conclusions (or some of them) to which plaintiff's objections (self-serving and invading the province of the jury) are now directed. Having previously brought out and laid before the jury the trainmaster's main conclusions or opinions as to what the evidence did or did not warrant, we think plaintiff was in no position to complain of the reasons asserted in the letter as the bases on which those conclusions were drawn. In any event, and without setting forth the text of the offending matter, we see no likelihood of the admission of the letter having materially affected the merits of the action one way or the other. This is particularly true in view of the somewhat loose manner in which the case was tried with respect to plaintiff's witnesses being permitted to state their conclusions. For example, one of his union representatives testified: "After reviewing the investigation, I wrote the local chairman giving him my opinion that the carrier did not prove the charges and they [plaintiff] had a meritorious case." Another stated that "if the facts were plainly spelled out [showing a violation of Rule G] we possibly would not handle the case."

■ This brings us to a consideration of the errors assigned with respect to the instructions. Insofar as relevant to the objections now urged, defendant's instruction No. 2 is to the following effect: That defendant as an employer "is entitled to make all reasonable rules as it may deem proper in the light of its experience for the reasonably safe and uniform operation of its business, and defendant's employees owe defendant the duty of obeying all such rules;" that defendant has a right to discharge any employee for the violation of its rules "provided the employee is discharged only for just and sufficient cause;" after a thorough investigation before an official having jurisdiction, etc., and that plaintiff was subject to defendant's Rule G, which prohibited the use of intoxicants. The instruction then told the jury "that if you find from the evidence that plaintiff violated defendant's Rule G and used intoxicants while on duty as engineer of defendant's train No. 72 somewhere between Poplar Bluff and Illmo, Missouri * * * then your verdict must be against the plaintiff and for the defendant."

Several objections are urged to this instruction, the first of which is that having told the jury that defendant was "entitled to make all reasonable rules as it may deem proper in the light of its experience for the reasonably safe and uniform operation of

its business," it was erroneous in failing to require the jury to find that Rule G fulfills the foregoing standard as to the kind of rules defendant can make. Secondly, that the effect of the instruction is to tell the jury that as a matter of law any use of intoxicating liquor (however small or minute, and irrespective of whether there is any effect on the user, or any incapacity produced by such use) is just and sufficient cause for discharge; that such an interpretation renders the rule "arbitrary, capricious and unreasonable," adding, as part of the same sentence (and which we confess our inability to reconcile with the foregoing), "and it is submitted that before that rule would be justified defendant must be required to prove by evidence, and require the jury to find that Rule G, so interpreted, is a 'reasonable rule[s] * * * in the light of its experience for the reasonably safe and uniform operation of its business.'" Although the existence of Rule G and plaintiff's violation of it on the occasion in question were both averred in the answer, no reply was filed, and hence no issue raised by the pleadings as to the validity of the rule, and in consequence there was no occasion for submitting the question of its reasonableness to the jury—if, indeed, that question, as applied to an operating rule such as Rule G, is ever a jury question.

It is further contended that the instruction is erroneous because it fails to submit the question of defendant's good faith in discharging plaintiff. No such issue was submitted by plaintiff's instructions, and the answer to the contention is that had he deemed that subject to be in issue, he should have requested an instruction thereon. That duty did not rest on defendant.

The reason for the rule is patent, and we take judicial notice that observance of the rule (counterparts of which are widely in force throughout the land in the transportation industry) is a matter of grave importance to the public, to the company and to its employees. To make just and sufficient cause for discharge for violation of the rule turn on the degree of intoxication or incapacity resulting from the use of intoxicants would be intolerable, and render the rule ineffectual as an instrumentality of protection. This view disposes of the objections to defendant's instruction No. 3, and renders unnecessary discussion of the error charged in the refusal of instructions which would have submitted the concept of disability to perform duties as a necessary ingredient of just and sufficient cause.

■ Plaintiff also assigns error in the giving of defendant's instruction No. 4, which told the jury that the burden of proving that plaintiff was discharged, and that if so, his discharge was not for just and sufficient cause, rested upon the plaintiff and remained with him throughout the trial, and that unless the jury found and believed from the evidence that plaintiff was discharged by defendant without just and sufficient cause, its verdict should be for the defendant. It is charged that the instruction is erroneous "in that there is no definition of terms," that it fails to set out facts for the jury to find to constitute just and sufficient cause, and therefore gives the jury a roving commission in deciding the issue of just and sufficient cause, and finally that the instruction is in conflict with defendant's instruction No. 2. The pivotal issue in the case was the wrongfulness or not of plaintiff's discharge for having used intoxicants while on duty on the occasion in question. In submitting that issue the plaintiff's instruction told the jury that if the jury found "that the plaintiff, on March 1, 1955, at the time when he was taken off his run as locomotive engineer for defendant, had not, prior to said time, while on duty, taken drinks of intoxicants * * * then you are instructed that plaintiff was not discharged for just and sufficient cause * * *." In view of the narrow issue upon which the jury was instructed and the verdict hinged, there would seem to be no possibility that the jury had any idea that the "just and sufficient cause," as referred to in plaintiff's instruction No. 1 and also in defendant's instruction No. 2, had reference to anything other than plaintiff's

discharge for drinking while on duty on the occasion in question, his supposed violation of Rule G. As to the objection bottomed on want of definition of terms, had plaintiff felt such a definition necessary, he should have offered an instruction thereon.

The judgment is affirmed.

EAGER and STORCKMAN, JJ., and BROADDUS, Special Judge, concur.