STATE of Missouri, ex rel., Carol
Russell FISCHER Director of
Revenue, Respondent,

v.

Dennis E. SANDERS, Appellant.

No. WD 60319.

Missouri Court of Appeals,
Western District.

March 19, 2002.

As Modified April 30, 2002.

Dennis E. Sanders, pro se, Jefferson City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Lemke, Asst. Atty. Gen., Jefferson City, for Respondent.

Before HAROLD L. LOWENSTEIN, P.J., THOMAS H. NEWTON and RONALD R. HOLLIGER, JJ.

THOMAS H. NEWTON, Judge.

Dennis Sanders was audited by the Internal Revenue Service (the IRS) after he failed to file federal or Missouri income tax returns in 1995 and 1996. On January 20, 1998, the IRS sent the Department of Revenue (the Department) a letter notifying the Director of Revenue (the Director) that there had been adjustments to Mr. Sanders' federal adjusted gross income for the years 1994 through 1996. Based upon the figures received from the IRS, the Department filed a state return on behalf of Mr. Sanders and calculated the amount of Missouri tax Mr. Sanders owed for 1995 and 1996, plus penalties and interest.

The Director sent Mr. Sanders a notice of deficiency and a list of steps he could take to protest the assessment. Accordingly, Mr. Sanders filed an appeal with the Administrative Hearing Commission. Mr. Sanders did not appear at the scheduled hearing, and his appeal was dismissed.

Subsequently, Mr. Sanders wrote the Director a letter. In this letter, he stated, "I'm willing to pay this debt, but I don't know how to pay it." The Department sent Mr. Sanders a response, which explained the interest and penalties and the methods of payment.

After nine months, Mr. Sanders had not paid, so the Director filed a *PETITION FOR DELINQUENT MISSOURI INDIVIDUAL INCOME TAX* in the Associate Circuit Court of Cole County. After hearing the evidence, judgment was entered for the Director in the amount of $3,112.55.[1] Thereafter, Mr. Sanders petitioned for a trial *de novo* in the Circuit Court of Cole County.

At the trial *de novo*, Mr. Sanders appeared in person and without counsel. The Director called the custodian of records for the Department's Customer Assistance Bureau, Deborah Niederhelm. Mr. Sanders had filed a motion *in limine* to limit the scope of the witness' testimony to areas of which she had personal knowledge. Because his motion was based on Rule 601 of the Federal Rules of Evidence, the court overruled the motion. After the

1. The docket entry for April 20, 2001, provides "Plt appears by Atty RG. Dft appears in person, without counsel. Plt presents evidence. Pltf rests. Court finds the issued [*sic*] for the Plf and against Dft. Judgment for Plt against Dft for $3112.55."

witness was sworn, Mr. Sanders objected on the same grounds:

> MR. SANDERS: Your Honor, I object. This person has no personal knowledge—
>
> THE COURT: Your objection—
>
> MR. SANDERS:—of my income tax.
>
> THE COURT: Your objection is noted for the record, Mr. Sanders, and I've made my ruling on it.

Through Ms. Niederhelm, the Director offered five exhibits. Ms. Niederhelm identified Exhibit 1 as an affidavit from the Department of Revenue showing that Mr. Sanders owed back taxes, interest, and penalties in the amount of $1,649.36 for 1995, and $1,557.16 for 1996, for a total of $3,112.55. She identified Exhibit 2 as an order of dismissal from the Administrative Hearing Commission concerning Mr. Sanders' appeal in which he failed to appear. Exhibit 3 was identified as a notice of deficiency accompanied by a list of choices that explained how to protest the assessment. Ms. Niederhelm identified Exhibit 4 as a letter Mr. Sanders wrote to the Director in which he stated, "I'm willing to pay this debt, but I don't know how to pay it." She identified Exhibit 5 as a letter the Department sent to Mr. Sanders explaining the interest and penalties and methods of payment.

The Director moved for the admission of all five exhibits into evidence. Mr. Sanders objected, "She has no personal knowledge of my federal gross adjusted income. There's been no foundation laid for this witness." The court overruled the objection and admitted the exhibits.

After the Director finished questioning the custodian of records, the trial judge asked Mr. Sanders if he had any questions. He answered, "Your Honor, this is all based on hearsay. There's no opportunity to cross-examine any federal witness, there's no foundation laid for any of the information the witness has given." The judge simply responded, "Do you have any questions of her?" and, at that point, Mr. Sanders cross-examined Ms. Niederhelm.

Mr. Sanders did not take the stand, and he presented no evidence. At the close of the evidence, the judge took the case under advisement. The trial court entered judgment in favor of the Director in the amount of $3,206.52.

This appeal follows.

 In his sole point on appeal, Mr. Sanders claims that "[t]he trial court erred in admitting the testimony of Deborah Niederhelm because the witness has no personal knowledge of the subject of the testimony or possesses no documentary evidence to substantiate such claims, in that Appellee provided no other evidence to support its claim against Appellant except for the erroneously-admitted testimony." In making his argument, Mr. Sanders reasons, "For over 800 years, since the origins of common law and the Magna Carta, it has been accepted practice in courts of law that no witness shall be permitted to provide testimonial evidence unless that witness possesses personal knowledge of such evidence." The question before us, however, is whether the trial court's decision to admit the custodian of records' testimony was an abuse of its discretion, "a ruling clearly against the logic of the circumstances, so arbitrary and unreasonable as to shock the sense of justice, and lacking careful consideration." *Rasse v. City of Marshall*, 18 S.W.3d 486, 489 (Mo.App. W.D.2000).

 Mr. Sanders correctly points out that Ms. Niederhelm did not have personal knowledge regarding the facts to which she testified. Normally, courts will exclude such evidence based on hearsay. "The essential principle of the hearsay rule

is that for the purpose of securing trustworthiness of testimonial assertions, and of affording the opportunity to test the credit of the witness, such assertions are to be made in court, subject to cross-examination." *State v. Chernick,* 280 S.W.2d 56, 60 (Mo.1955). When a statement "is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination." *Mash v. Mo. Pac. R.R. Co.,* 341 S.W.2d 822, 827 (Mo.1960). However, there is a statutory exception in Missouri to the hearsay rule for business records.

■ Business records are admitted into evidence pursuant to the Uniform Business Records as Evidence Act, §§ 490.660–490.692.[2] Section 490.680 provides:

> A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

Admission is justified where the court is satisfied "that the sources of information and mode and time of preparation indicate trustworthiness[.]" *Estate of West v. Moffatt,* 32 S.W.3d 648, 653 (Mo.App. W.D. 2000). In his sole point on appeal, however, Mr. Sanders does not challenge the trial court's admission of the records; nor does he challenge the qualification of the documents as business records. Instead, Mr. Sanders challenges the court's decision to allow Ms. Niederhelm to testify on the basis that she lacked personal knowledge.

■■ The fundamental purpose of the business record exception to the hearsay rule is that it "allows the introduction into evidence of records qualified as business records without the personal appearance of those who prepared the records." *Helton v. Dir. of Revenue,* 944 S.W.2d 306, 309 (Mo.App. W.D.1997). As such, personal knowledge on the part of the custodian as to when or how the record came into existence is simply not a prerequisite to the admission of the custodian's testimony regarding the business record. *See, e.g., Estate of Markley,* 922 S.W.2d 87, 92 (Mo. App. W.D.1996); *Rossomanno v. Laclede Cab Co.,* 328 S.W.2d 677, 682–83 (Mo. banc 1959). "To require more would, as a practical matter, seem to enforce the attendance and testimony of the various persons who co-operated in making the record, which is the very thing the [Uniform Business Records as Evidence] Act seeks to obviate." *Allen v. St. Louis Pub. Serv. Co.,* 365 Mo. 677, 285 S.W.2d 663, 666 (1956). Therefore, as it relates to his claim that the trial court erroneously admitted Ms. Niederhelm's testimony because she lacked personal knowledge, Mr. Sanders' claim is without merit.

■ Logically, Mr. Sanders' argument in his *Appellant Brief* that the business records were erroneously admitted into evidence due to Ms. Niederhelm's lack of personal knowledge must also fail because her personal knowledge was not essential. In his *Reply Brief,* Mr. Sanders argues for the first time that the business records themselves were inadmissible for various reasons. A reply brief presents appellants with the opportunity to rebut arguments made by respondents in their briefs, and, inasmuch as he attempts to raise a new

---

**2.** Unless otherwise indicated, all statutory references are to RSMo 2000.

point on appeal, Mr. Sanders has not properly presented this issue for appellate review. *Pearman v. Dep't of Soc. Servs.*, 48 S.W.3d 54, 55 (Mo.App. W.D.2001). Accordingly, we decline to inquire as to the admissibility of the exhibits.

Finally, we note that an orderly procedure is set forth by statute for situations such as Mr. Sanders'. Under § 143.601, if the amount of the taxpayer's federal taxable income is changed or corrected by the IRS, the taxpayer is obligated to report such change within ninety days of the final determination. When the taxpayer has not complied with the requirements of § 143.601, a notice of deficiency may be mailed to the taxpayer within one year after the Director of Revenue shall become aware of such a determination. § 143.711.4. A notice of deficiency "shall constitute a final assessment of the amount of tax" due except as to amounts "to which the taxpayer has filed a protest with the director of revenue." § 143.621. The taxpayer has sixty days after the mailing of deficiency in which to file a written protest against the proposed assessment, in which case "the director of revenue shall reconsider the proposed deficiency." § 143.631.1. The Director then mails notice of the decision to the taxpayer. § 143.641. Thereafter, the taxpayer has a right to appeal the Director's determination to the Administrative Hearing Commission. § 621.050.1.

Mr. Sanders attempts to contest his tax liability on appeal, but it would have been an issue properly decided upon administrative review. Although he appealed to the Administrative Hearing Commission, Mr. Sander's did not appear, and, therefore, he may not collaterally attack the assessment under the guise of an appeal from the Director's collection action. *See, e.g., State ex rel. Lohman v. Latimer*, 4 S.W.3d 560, 562 (Mo.App. S.D.1999) ("Filing a protest with the Director and appealing to the commission was Appellant's exclusive remedy, which he failed to pursue."); *State ex rel. Dir. of Revenue v. Anderson*, 957 S.W.2d 800, 801 (Mo.App. S.D.1997) (The taxpayer's right to appeal the Director's decision to the Administrative Hearing Commission was the appellant's "exclusive remedy for litigating the issue of whether he owed the assessed tax."); *State ex rel. Dir. of Revenue v. White*, 796 S.W.2d 629, 630 (Mo. banc 1990) ("Petition for review by the Administrative Hearing Commission is the exclusive method for challenging the assessment."). Thus, Mr. Sanders' argument that the Director "was required to provide evidence of the federal income tax liability to the trial court in order to prove its claim" is patently wrong. *See White*, 796 S.W.2d at 629–30. The change in his federal tax liability for the years of 1995 and 1996 is an issue that could have been resolved by the Administrative Hearing Commission, but it has no place in the present appeal.

The Director's petition alleged that notice of demand for payment was issued pursuant to § 143.861.2 and that the Director certified the matter to the attorney general for institution of suit against Mr. Sanders as provided by § 143.861.3. The petition also pointed out that Mr. Sanders had not contested his tax liability pursuant to § 143.621. In order to demonstrate why Mr. Sanders had been sent a notice of deficiency in the first place, the petition also alleged that Mr. Sanders was audited by the IRS for the years of 1995 and 1996 and that "an additional federal taxable income was proposed and agreed to by [Mr. Sanders]." *See* §§ 143.601, 143.711.4. This seems to be the source of Mr. Sanders' overarching complaint. He believes that Ms. Niederhelm's lack of personal knowledge regarding his federal tax liability and the Director's failure to substantiate the allegations was fatal to the Di-

rector's claim. However, establishing such facts was not crucial to the Director's ability to obtain a judgment, and Mr. Sanders' argument to the contrary represents a fundamental misunderstanding of the process set out by statute. The notice of deficiency that the Department sent at the outset was required to be "limited to the effects on Missouri taxable income of · . . . [t]he issues on which the federal determination is based[.]" § 143.711.4(1). Again, Mr. Sanders had the opportunity to protest the assessment and appeal the Director's determination to the Administrative Hearing Commission, but he failed to exhaust his exclusive remedy. Thus, even if properly briefed, we would lack jurisdiction to entertain the issue in any event.

Therefore, after a thorough review of the record, the legal file, and the briefs, the judgment of the circuit court is affirmed.

HAROLD L. LOWENSTEIN, P.J., and RONALD R. HOLLIGER, J., concur.