525 F.Supp. 170 (1981)
ITT INDUSTRIAL CREDIT COMPANY, a Nevada Corporation, Plaintiff,
v.
H & K MACHINE SERVICE COMPANY, INC., a Missouri Corporation, Defendant.
No. 79-1263C(1).
United States District Court, E. D. Missouri, E. D.
September 30, 1981.
James W. Erwin, St. Louis, Mo., for plaintiff.
Jay G. Newquist, Irvin A. Friedman, St. Louis, Mo., for defendant.

MEMORANDUM
WANGELIN, Chief Judge.
This matter is before the Court upon plaintiff's motion for summary judgment *171 on Count 1 of its complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that no material issue of fact exists in this cause and that therefore, as a matter of law, it deserves judgment in the amount of Seventy Seven Thousand Three Hundred and Fourteen Dollars ($77,314.65) plus interest from August 6, 1976 to the date of judgment.
This cause arose when the plaintiff ITT Industrial Credit Company (hereinafter ITT) loaned Two Hundred Seventeen Thousand Three Hundred and Seventy Four Dollars ($217,374.00) to the Southern Screw Machine Products, Inc. (hereinafter Southern Screw) on December 9, 1975. The loan was to be used to expand the working capital of Southern Screw as well as to pay off existing loans to other creditors. The loan also provided for Seventy Six Thousand Dollars ($76,000.00) which was to allow for the purchase of an ACME Gridley one and one quarter inch RA-6 Spindle Automatic Bar Machine, Serial No. 71237-C (hereinafter bar machine). Southern Screw executed a promissory note and a security agreement in favor of ITT for various items of equipment owned by Southern Screw including the bar machine in order to secure the repayment of all present and future indebtedness Southern Screw owed to ITT. The security agreement provided that the collateral could not be sold or removed from the premises of Southern Screw without written permission of ITT. Breach of the security agreement was to constitute an event of default, an event which provided that ITT would have all rights and remedies granted to a secured party under the Uniform Commercial Code, including the right to take possession of the collateral.
ITT perfected its security interest in the bar machine by the requisite filings with the Secretary of State of the State of Tennessee on February 2, 1976. Southern Screw became further indebted to ITT when leasing another machine on October 6, 1976. The lease was also secured by ITT's security interest in the bar machine.
Warren Kellerman, President of the defendant in this cause, H & K Machine Service, Inc., (hereinafter H & K) had done business with Southern Screw and was aware of the use and discussed the capabilities of the bar machine. In the year 1976 H & K manufactured and sold to Southern Screw about Two Hundred Thousand Dollars ($200,000) worth of machine parts. Southern Screw had fallen behind in paying for these parts, and Kellerman had discussed the collection problems of Southern Screw with Gega Barek, the President of Southern Screw. In 1976 Barek offered to sell the bar machine to Kellerman who eventually came to Memphis to inspect the machine, and purchased said machine for Forty Thousand Dollars ($40,000) cash and cancelled Thirty Seven Thousand Three Hundred and Fourteen Dollars and Sixty Five Cents ($37,314.65) of debt owed by Southern Screw to it. The total price was exactly equal to what Southern Screw had paid for the machine when it had bought it about nine months earlier. ITT neither had knowledge of or gave consent to the sale, nor were any of the proceeds of the sale forwarded to ITT. There exists now a balance on the December, 1975 loan of Twenty Six Thousand Nine Hundred Seventy Eight Dollars and Twenty Nine Cents. The October, 1976 machinery lease has an outstanding balance of over Five Hundred Thousand Dollars ($500,000). ITT also claims as damages the additional sum of Twenty Eight Thousand Five Hundred Twenty Six Dollars and Thirteen Cents ($28,526.13) representing interest on the fair market value of the bar machine since August 6, 1976. In the alternative, ITT seeks to repossess the machine from H & K.
Southern Screw having disposed of the machine did not in and of itself extinguish ITT's security interest. Tenn. Code Ann. § 47-9-306(2). In this particular instance, an unauthorized disposition of the collateral was made and such disposition constituted a default and therefore an action in conversion will lie. Mammoth Cave Production Credit Assn. v. Oldham, 569 S.W.2d 833, 837 (Tenn.App.1977). When Southern Screw executed the unauthorized sale, provided for the machine's removal *172 from the state, thereby jeopardizing the secured party's security interest, ITT then became entitled to possession of the collateral. H & K's arguments notwithstanding, the lack of knowledge of the security interest of ITT and the so-called good faith disposition by Southern Screw and H & K are not relevant to an action in conversion. Commercial Credit Corp. v. Joplin Automobile Auction Co., 430 S.W.2d 440, 444 (Mo. App.1968). The Uniform Commercial Code makes only one provision for a buyer taking free of a secured party's security interest and that it when a purchaser is a "buyer in the ordinary course of business", See Uniform Commercial Code, § 9-307, and § 1-201(9). The leading commentator on the Code described five requirements which must be met for one to earn the status as a buyer in the ordinary course of business: (1) that he was a buyer in the ordinary course; (2) that he did not take the goods in total or partial satisfaction of a preexisting debt; (3) that he bought the goods from one who was in the business of selling goods of that kind; (4) that he bought the goods in good faith and without knowledge that the purchase was in violation of a third party security interest; and (5) that the security interest was created by his seller. White and Summers, Uniform Commercial Code, § 25-13, p. 940 (1972). It is clear to this Court that the first two elements of this affirmative defense have not been established in this cause, and therefore H & K cannot be considered a buyer in the ordinary course of business and as a result bought the machine subject to the security interest of ITT.
The bar machine was not a piece of inventory for Southern Screw but rather a piece of equipment used to manufacture inventory. Southern Screw only sold the machine because it was unsuitable for the purpose for which it was purchased. Further, if this machine was sold in the ordinary course of business, it would ordinarily be expected of Southern Screw to have sold it at a profit, but this was not the case. Southern Screw sold the machine for precisely what it had purchased it for nine months earlier. Certainly one selling a good in the ordinary course of business would seek to make a profit.
Even more important, the admitted consideration passed to Southern Screw for the machine consisted of Forty Thousand Dollars ($40,000) cash and the cancellation of a preexisting debt owed by Southern Screw to H & K in the amount of Thirty Seven Thousand Three Hundred Fourteen Dollars and Sixty Five Cents ($37,314.65). This cancellation of a preexisting debt disqualifies H & K as a buyer in the ordinary course of business in terms of the second element of the above cited affirmative defense. Ray v. City Bank & Trust Co., 358 F.Supp. 630 (S.D.Ohio 1973). H & K meets this contention only with the argument that Southern Screw's agent at the time of the execution of the sale did not have a check with him and that Southern Screw ran an open account with H & K during this period and therefore it was within the scope of the ordinary course of business to simply cancel debt between the two parties. Neither of these facts alter the underlying nature of the transaction, one which Southern Screw traded equipment for the cancellation of debt.
The authorities reviewed by this Court would seem to indicate that a seller may not shift a good from equipment to inventory status and then terminate the effective security interest enjoyed by a secured party by selling that good. Upon review of the facts and circumstances which surrounded the sale of this machine, and based upon the depositions, affidavits and other competent materials brought before this Court, it is this Court's conclusion that the H & K Machinery Company was not a buyer in the ordinary course of business of the bar machine which is the subject of this litigation. Therefore, this Court having found H & K liable for conversion of the bar machine, it will proceed to the issue of damages.
H & K has admitted that the fair market value of the bar machine on the date in question was Seventy Seven Thousand Three Hundred Fourteen Dollars and Sixty Five Cents ($77,314.65). The amount *173 of the secured debt owed to ITT far exceeds the fair market value of the bar machine, and this debt was secured by the bar machine and therefore plaintiff is entitled to recover the full Seventy Seven Thousand Three Hundred Fourteen Dollars and Sixty Five Cents ($77,314.65) as actual damages. Howard National Bank & Trust Co. v. Jones, 238 S.W.2d 905, 911 (Mo.App.1951) aff'd 243 S.W.2d 305, 308 (Mo.1951).
In addition, ITT was entitled to interest at the legal rate on the fair market value of the property from the date of the conversion. Commercial Credit Corp. v. Joplin Automobile Auction Co., supra, at 444 and 445. Computed to this Thirtieth day of September, and allowing for the change in the legal rate of interest, the total amount of interest collectible is Twenty Eight Thousand Five Hundred Twenty Six Dollars and Thirteen Cents ($28,526.13). Thus, the total amount of damages suffered by ITT is One Hundred and Five Thousand Eight Hundred and Forty Dollars and Seventy Eight Cents ($105,840.78). Judgment will be entered in that amount.