JOHN DEERE COMPANY, a corporation, Plaintiff-Appellant,

v.

JEFF DeWITT AUCTION COMPANY, INC., a Missouri corporation, and Roger Gamble, Defendants-Respondents.

No. 13491.

Missouri Court of Appeals, Southern District, Division Three.

May 9, 1985.

John Wm. Ringer, Powell, Ringer and Bischof, Dexter, for plaintiff-appellant.

Stephen L. Taylor, Gilmore, Gilmore, Taylor & Burns, Sikeston, for defendant-respondent Jeff DeWitt Auction Co., Inc.

Phillip J. Barkett, Jr., Dempster, Fuchs & Barkett, Sikeston, for defendant-respondent Roger Gamble.

HOGAN, Judge.

This is an action in conversion brought by plaintiff John Deere Company against defendants Jeff DeWitt Auction Company, Inc., and Roger Gamble, to enforce its purchase-money security interest in a John

Deere model 4840 tractor.[1] After the discovery process was complete, both plaintiff and defendants moved for summary judgment. The trial court granted the defendants' motion. Plaintiff appeals.

Capsulated, the background facts are that on January 22, 1980, Green Line Equipment, Inc., of Columbus, Mississippi, sold a model 4840 John Deere tractor to one William Maloney. Maloney lived in or near Maben, in Oktibbeha County, Mississippi. Green Line extended credit to Maloney so he could purchase the tractor. The combination retail installment contract and security agreement executed at the time of sale was assigned for value to plaintiff John Deere Company. Thereafter plaintiff perfected its security interest by filing the combined retail credit installment agreement and financing statement in the office of the Chancery Clerk in Starkville, Oktibbeha County, Mississippi, and with the Mississippi Secretary of State at Jackson. See Mississippi Code 1972 § 75–9–401(1)(a) and (c), as amended. Plaintiff later perfected its security interest in Arkansas and in Missouri but in this court, the defendants do not contest the existence of plaintiff's perfected security interest at all times relevant to the dispute in litigation.

■ On March 12, 1980, defendant Gamble purchased three tractors from Maloney. The purchase was made in Oktibbeha County, Mississippi. One of these tractors was the tractor Maloney had purchased from Green Line. Gamble took that tractor back to Black Oak, Arkansas, and "cleaned it up." On March 17, Gamble hauled the tractor to Sikeston, Missouri, for sale by the defendant auction company. The tractor was sold at auction that day for $34,100 to Des Arc Equipment Company of Des Arc, Arkansas. Plaintiff then commenced this action against the defendants. Because the proceeds of the auction sale are,

in this case, identifiable the plaintiff's choice of remedy was proper, even though the collateral has been sold. See *ITT Industrial Credit Co. v. H & K Machine Service*, 525 F.Supp. 170, 172–173 (E.D.Mo. 1981); *Commercial Credit Corporation v. Joplin Automobile Auction Co.*, 430 S.W.2d 440, 443–444[3, 4][5, 6] (Mo.App. 1968).

■ The case is before us on appeal from the trial court's order granting defendants a summary judgment, and we do not undertake to resolve the cause on its merits. To be entitled to summary judgment a party litigant must show "by unassailable proof to be entitled thereto as a matter of law." Rule 74.04(h). On appeal, the record must be taken in the light most favorable to the party against whom the judgment was rendered. *Elliott v. Harris*, 423 S.W.2d 831, 835 (Mo. banc 1968); *Bell v. Garcia*, 639 S.W.2d 185, 190 (Mo.App. 1982). So viewed, the record shows that Maloney was a farmer who also dealt in tractors. Therefore the ultimate and narrow question before the trial court was whether the tractor was "inventory" or "equipment" in Maloney's hands at the time it was sold to Gamble. We conclude it was not shown by unassailable proof whether the tractor was inventory or equipment at the time Gamble bought it and therefore we reverse and remand.

Broadly stated, the legal question presented for trial in this case is one of priority between a secured creditor and a purchaser of goods under Article 9 of the U.C.C. In our view, the provisions of § 9–201, 9–306(2) and subsection 1 of § 9–307 establish the starting point for an analysis of the priorities involved. The so-called "Golden Rule" of Article 9 is stated in § 9–201 and is reiterated in § 9–306(2), which are codified in Missouri as § 400.9–

1. The court has independently ascertained that the John Deere model 4840 tractor is a large "row crop" tractor perhaps 12 to 16 feet long. The description we have leaves us satisfied that the vehicle is a "farm tractor" within the exemptive language of § 301.010(7), RSMo 1978, requiring the registration of motor vehicles. We

have therefore set aside any requirement of registration of motor vehicles (and issuance of a certificate of title) to the extent such a requirement might bear on the parties' rights in this case. See White and Summers, Uniform Commercial Code § 25.16 (2d ed. 1980).

201 and § 400.9–306(2). Section 400.9–201, as material here, reads:

"Except as otherwise provided by this chapter a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors...."

Our version of § 9–306(2) reads as follows:

"Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also *continues in any identifiable proceeds* including collections received by the debtor." (Emphasis ours.)

An exception for the protection of buyers of goods in the ordinary course of business is provided by § 9–307(1) of the U.C.C. Our version of that subsection reads as follows:

"(1) A buyer in ordinary course of business (subsection (9) of section 400.1–201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence."

■ It is this exception upon which the defendants rely. Some attention must be given to the Official Comment upon this section and to the Code definitions of "equipment," "inventory" and "buyer in ordinary course of business," because in construing uniform and model acts enacted by the General Assembly, we must assume it did so with the intention of adopting the accompanying interpretations placed thereon by the drafters of the model or uniform act. *State v. Anderson,* 515 S.W.2d 534, 539[4] (Mo. banc 1974); *cf. State ex rel. Newport v. Wiesman,* 627 S.W.2d 874, 877 (Mo. banc 1982).

The Official Comment to § 9–307 notes:

"2. The definition of "buyer in ordinary course of business" in Section 1–201(9) restricts the application of subsection (1) to buyers (except pawnbrokers) 'from a person in the business of selling goods of that kind': thus the subsection applies, in the terminology of this Article, primarily to inventory...."

Section 9–109 defines various categories of goods for the purposes of Article 9. Section 9–109(2) provides that goods are "equipment":

"(2) ... [I]f they are used or bought for use primarily in business (including farming or a profession) or by a debtor who is a non-profit organization or a governmental subdivision or agency or if the goods are not included in the definitions of inventory, farm products or consumer goods."

Subsection (4) of § 9–109 provides that goods are:

"(4) '[I]nventory' if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process or materials used or consumed in a business. Inventory of a person is not to be classified as his equipment." The Official Comment to § 9–109 also includes the following:

"2. The classes of goods are mutually exclusive; the same property cannot at the same time ... be both equipment and inventory, for example. In borderline cases—a physician's car or a farmer's jeep which might be either consumer goods or equipment—the principal use to which the property is put should be considered as determinative....

3. The principal test to determine whether goods are inventory is that they are held for immediate or ultimate sale. Implicit in the definition is the criterion that the prospective sale is in the ordinary course of business. Machinery used in manufacturing, for example, is equipment and not inventory even though it is the continuing policy of the enterprise to sell machinery when it becomes obsolete...."

■ Other Code definitions are material to the dispute, but to turn abruptly to the specific exception in issue—that created by subsection 1 of § 9–307 of the U.C.C.—a leading commentator and at least one Missouri court have identified at least five conditions which must be met in order for one to qualify as a buyer in the ordinary course of business under § 9–307(1).[2] The purchaser must show: (1) that he was a buyer in the ordinary course; (2) that he did not take the goods in total or partial satisfaction of a preexisting debt; (3) that he bought the goods from one who was in the business of selling goods of that kind; (4) that he bought the goods in good faith and without knowledge that the purchase was in violation of a third-party security interest, and (5) that the security interest was created by his seller. *ITT Industrial Credit Co. v. H & K Machine Service*, 525 F.Supp. at 172; White and Summers, Uniform Commercial Code § 25–13 at 1067.

The relevant additional facts to which these principles must be applied may be stated briefly. The existence of plaintiff's perfected security interest is not denied. Further, we set the parties' elaborate arguments concerning "good faith" to one side. We have the tentative view that the "good faith" required of defendant Gamble in the factual situation presented is that order of bona fides required of a "merchant" by § 2–103(1)(b) of the U.C.C., which is "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." We emphasize this conclusion is not necessary to the result in this case.

The trial court had a good deal of proof, of varying degrees of probative value, before it for consideration. Defendant Gamble testified by deposition that his seller, Maloney, lived in Maben, Mississippi, about 200 or 250 miles from Batesville, Arkansas. Gamble had bought tractors from Maloney for several years; "[j]ust all kinds" but mostly John Deere tractors. In particular,

the following question and answer appear in defendant Gamble's deposition: "Q. Mr. Gamble, at the—in March when you bought this [tractor] from Bill Maloney, was he an implement dealer, to your knowledge? Or was he just a farmer? A. He was farming and buying and selling farm equipment through the winter." Further, Mr. Gamble testified: "Q. Do you know whether he sold to—whether he had a lot where he sold to other farmers? A. No, he didn't, I don't think. I think he'd just dig it up here and there, you know, buy off a dealer when he found something."

One of the affidavits filed on defendants' behalf was executed by one William W. Gates. The substance of the affidavit was that William Gates was personally well acquainted with Maloney; that Maloney regularly sold tractors from the lot of an enterprise operated in the name Farm Service Center, Inc., in Clarksdale, Mississippi, and that during the fall of 1979 and the spring of 1980, Maloney was reportedly still farming near Lexington, Mississippi.

■ This recitation of the evidence is sufficient to illustrate the legal question we have at hand: was the particular tractor covered by the plaintiff's security agreement "inventory" or "equipment" in Maloney's hands? Upon the record and facts before the trial court, that question cannot be answered as a matter of law. Maloney was a farmer; he also sold tractors. However, the Official Comment to subsection (1) of § 9–307 of the U.C.C., which we have quoted, makes it clear that that subsection was meant to apply to inventory, and Official Comment 3 to § 9–109 makes it clear that a sale incidental to the principal business does not make the seller a person in the business of selling goods of that kind.

According to some authority, the nature of the collateral, whether equipment or inventory, is to be determined by the use

---

**2.** There is a sixth condition applicable when "farm goods" are involved, White & Summers, Uniform Commercial Code § 25–13 (2d ed. 1972), but we take no account of it here because the goods involved are not "farm goods." See Official Comment 5 to § 9–109 of the U.C.C. (1962 Official Text).

intended at the time the security agreement is executed. *Matter of Benton Trucking Service, Inc.*, 21 B.R. 574, 578 (1982). Other courts have considered the nature of the security agreement as indicative of the status of the collateral. See, e.g., *Sindone v. Farber*, 105 Misc.2d 634, 432 N.Y.S.2d 778, 782 (1980). Certainly there is nothing in the plaintiff's security agreement which suggests a sale was contemplated when it was executed. To the contrary, the security agreement specifically provides that the goods covered by the agreement will be kept in Oktibbeha County, Mississippi, and provides that any attempt to sell or encumber any of the goods covered by the agreement shall constitute an event of default. This is quite different from the provision in the inventory financing agreement discussed in *Universal C.I.T. Credit Corporation v. Middlesboro Motor Sales*, 424 S.W.2d 409, 412–413 (Ky. 1968), which provided that the debtor "shall have liberty to exhibit and to sell each chattle [sic] in the ordinary course of trade and for the *respective Principal Obligations* shown in the respective statements." Such language, or language to similar effect indicates the intention of the secured creditor to authorize disposition of the collateral as provided by § 9–306(2) of the U.C.C.

■ So, and to reiterate, one cannot say with absolute certainty whether the collateral was "equipment" or "inventory." Maloney was a farmer; the tractor was certainly susceptible of being used as farm equipment. In *ITT Industrial Credit Co. v. H & K Machine Service*, 525 F.Supp. at 172, the court reached the conclusion "that a seller may not shift a good from equipment to inventory status and then terminate the effective security interest enjoyed by a secured party by selling that good." We do not adjudicate the status of the tractor as "inventory" or "equipment" in Maloney's hands. We do conclude that defendant Gamble did not show by unassailable proof and as a matter of law that the tractor was "inventory," therefore Maloney's status as "one in the business of selling goods of that kind" was not shown by the same order of proof and summary judgment in Gamble's favor and against the plaintiff was not authorized.

■ As to defendant Jeff DeWitt Auction Company, Inc., its legal relation to Gamble in conducting the sale to Des Arc is not sufficiently established to state with certainty whether it took free of the security interest created by Gamble's seller. Gamble insisted that he and DeWitt "partnered" the transaction, but the proofs before the trial court are insufficient to show unassailably and as a matter of law whether Gamble and DeWitt were principal and agent, joint venturers, or in some other legal relation. It follows that a summary judgment against plaintiff and in favor of defendant DeWitt was also unauthorized.

For the reasons stated, the judgment is reversed and the cause is remanded.

CROW, P.J., and MAUS and TITUS, JJ., concur.