**WHIRLPOOL FINANCIAL CORPORATION, Plaintiff,**

v.

**MERCANTILE BUSINESS CREDIT, INC., et al., Defendants.**

No. 4:94CV00364 GFG.

United States District Court, E.D. Missouri, Eastern Division.

May 18, 1995.

David P. Weiss, Weiss and Associates, St. Louis, MO, for Whirlpool Financial Corp.

Robert H. Brownlee, Sr., Partner, Thompson and Mitchell, St. Louis, MO, for Mercantile Business Credit, Inc.

Kevin M. Abel, Bryan Cave, St. Louis, MO, for Richard Sullivan.

Richard Sullivan, Amherst, NH, pro se.

Harold F. Glass, Schroff and Glass, Springfield, MO, for Robert Bumberry.

Matthew D. Menghini, Husch and Eppenberger, St. Louis, MO, for Richard Weber.

Joseph J. Trad, Lewis and Rice, St. Louis, MO, Donald D. Hindman, Elk Grove Village, IL, for Donald Hindman.

### *ORDER*

GUNN, District Judge.

This matter is before the Court on the motion for summary judgment of defendant Mercantile Business Credit, Incorporated (MBCI).

Plaintiff Whirlpool Financial Corporation (Whirlpool) filed suit against MBCI, Richard Sullivan, Robert Bumberry, Richard Weber and Donald Hindman. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Counts I, II and III are against MBCI and are for an accounting, conversion and unjust enrichment respectively. Counts IV and V are for breach of fiduciary duty and are levelled against the remaining defendants. MBCI has filed a motion for summary judgment. Whirlpool opposes that motion.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987). The moving party bears the burden of showing

both the absence of a genuine issue of material fact and his entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(c).

Once the moving party has met his burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e) *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514; *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273–74 (8th Cir.1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Certain facts are undisputed as between Whirlpool and MBCI; the other defendants have not responded to MBCI's motion for summary judgment. Whirlpool and MBCI are engaged in the business of asset-based commercial lending. At all relevant times Consolidated Convenience Systems, Inc. (CCSI) was the majority shareholder in Anda, Inc. (Anda) and the sole shareholder of Ozark Grocer, Inc. (Ozark). Anda was a wholesale distributor of cigarettes, tobacco products and grocery products to convenience stores. Ozark also was a wholesale distributor of the same types of products to convenience stores. Both Anda and Ozark were based in Springfield, Missouri.

On November 27, 1989, Whirlpool entered into a Loan and Security Agreement (LSA) with Anda. Pursuant to the LSA between Whirlpool and Anda, Whirlpool's loan to Anda included four separate extensions of credit: (1) a $1,250,000 senior real estate term loan; (2) an $800,000 senior machinery and equipment term loan; (3) a $2,500,000 senior subordinate term loan; and (4) an $11,000,000 revolving line of credit. As security for Anda's obligations under the LSA, Anda granted Whirlpool a security interest in, among other things, Anda's inventory, accounts, general intangibles, equipment, furniture and fixtures, contract rights, and proceeds from all of the above. Whirlpool perfected its security interest in that collateral by filing UCC–1 financial statements with the appropriate filing offices in Kansas, Kentucky and Missouri on or before January 31, 1991.

In 1990, defendant Sullivan, who was a stockholder, director and chief executive officer of CCSI and a director and chairman of Anda, began negotiations with defendant Bumberry, who was then the sole shareholder of Ozark, to acquire the stock of Ozark. In March, 1991, CCSI acquired the stock of Ozark and MBCI began providing financing to Ozark. Pursuant to its loan and security agreement with Ozark, MBCI provided Ozark with day-to-day financing and took a security interest in virtually all of Ozark's assets, including Ozark's inventory and accounts receivable.

Under its lending arrangements with MBCI, Ozark deposited the collections of its accounts receivable into a blocked account at Commerce Bank of Springfield. From time to time the blocked account was swept by automated clearing house transfer and the funds were applied to MBCI's loan balance. When Ozark required funds for its operations, it borrowed them from MBCI.

On or about September 9, 1992, Whirlpool declared its loan to Anda to be in default. On or about October 9, 1992, MBCI declared its loan to Ozark to be in default. Ozark ceased operations at approximately the same time as Anda. Ozark surrendered its assets and inventory to MBCI.

The following facts are disputed. Whirlpool alleges that during the course of a year, from the fall of 1991 to 1992, Anda transferred inventory, primarily cigarettes, to Ozark. Whirlpool claims that Ozark did not pay cash for the goods; it alleges that unlike its sales to regular customers, Anda transferred inventory to Ozark on an open line of credit at cost. Whirlpool asserts that such transfers created high intercompany receiv-

ables, violated the LSA and did not extinguish any security interest held by Whirlpool in the cigarettes or in the proceeds resulting from their eventual sale.

MBCI received proceeds from such eventual sales, according to Whirlpool, because Ozark deposited them in the MBCI account that was applied to Ozark's loan balance. Also, Whirlpool alleges that when MBCI foreclosed on Ozark, it took possession of and sold some remaining cigarettes transferred from Anda and pocketed the proceeds. Whirlpool asserts that MBCI knew of plaintiff's interest in the cigarettes and that Ozark was not paying Anda for the cigarettes and nevertheless accepted the proceeds from Ozark's and its own sale of the transferred cigarettes.

MBCI states that the alleged transfers were legitimate sales authorized either expressly by the LSA or impliedly by the actions of Whirlpool employees and that therefore Whirlpool has no claim to the cigarettes or to proceeds thereof. MBCI disputes that it directly collected the proceeds of Ozark's sale of the transferred inventory; alternatively, MBCI argues that the such monies are nevertheless not "proceeds" to which Whirlpool is entitled. MBCI also denies Whirlpool's allegation that MBCI possessed and sold remaining cigarettes transferred from Anda after Ozark defaulted on its debt.

Whirlpool now seeks to recover the proceeds from the sale of all the transferred inventory in this case. Both parties agree that Missouri law applies, and so Whirlpool's security interest in the transferred inventory is governed by Article 9 of Missouri's Uniform Commercial Code, Mo.Rev.Stat. §§ 400.9–101 *et seq.* *See* Mo.Rev.Stat. §§ 400.9–102(1)(a), 400.9–104.

■ MBCI argues that it is entitled to summary judgment because Whirlpool does not have a right to any of the money that it claims MBCI received from Ozark. Indeed, Whirlpool's claims all have at their foundation Whirlpool's rights as a secured party to certain sums in MBCI's possession. Whirl-pool's claims against MBCI are for conversion, an accounting and unjust enrichment. "Conversion is the wrongful exercise of dominion or ownership over a chattel. The gist of the modern action, whatever the actual variety, is tortious interference with the right of possession." *Ensminger v. Burton,* 805 S.W.2d 207, 210–11 (Mo.Ct.App.1991) (citations omitted). Unjust enrichment presupposes that the defendant was enriched with some benefit at the expense of the plaintiff such that it would be unjust to allow the defendant to retain that benefit. *American Civil Liberties Union v. Miller,* 803 S.W.2d 592, 595 (Mo.1991); *Ticor Title Ins. Co. v. Mundelius,* 887 S.W.2d 726, 727 (Mo.Ct.App. 1994). If Whirlpool is not entitled to certain proceeds it claims MBCI possesses, then its claims for conversion and unjust enrichment against MBCI must fail. If its underlying claims for relief fail, so too must its claim for an accounting. *Weltscheff v. Medical Center of Independence,* 604 S.W.2d 796, 801 (Mo.Ct. App.1980).

■ Under § 400.9–306(2), when a debtor makes an unauthorized sale of collateral, the buyer takes the collateral subject to the security interest, and in an action for conversion, the secured party may recover the proceeds or the collateral from any transferee.[1] *Alpine Paper Co. v. Lontz,* 856 S.W.2d 940, 943 (Mo.Ct.App.1993) (citing *Fricke v. Valley Prod. Credit Ass'n,* 778 S.W.2d 829, 833 (Mo. Ct.App.1989)). If the debtor's sale of the collateral is authorized, either expressly or impliedly, then the secured party surrenders his security interest and must look only to the debtor personally for payment of the debt. *Charterbank Butler v. Central Cooperatives, Inc.,* 667 S.W.2d 463, 465 (Mo.Ct.App. 1984); *Farmers & Merchants Bank v. Borg–Warner Acceptance Corp.,* 665 S.W.2d 636, 640 (Mo.Ct.App.1983). Therefore, a determination of whether Anda's transfer of cigarettes to Ozark was authorized or unauthorized is crucial to the resolution of this case. Because factual disputes exist regarding this

---

1. This is true unless the transferee is a buyer in the ordinary course. *See* Mo.Rev.Stat. § 400.9–307. MBCI is not a buyer in the ordinary course because, *inter alia,* it allegedly accepted ciga-rettes and proceeds from the sale of the same in satisfaction of a debt. Mo.Rev.Stat. § 400.1–201(9).

issue, the Court cannot grant summary judgment.

■ According to the LSA, the sale of inventory was permitted "only in the ordinary course of business, unless written permission to the contrary is obtained from Whirlpool." (Compl.Attach.Exh. 1 at ¶ 8.1.3.) The LSA prohibited Anda from entering into any "sales or other transactions with any affiliates on terms less favorable than … from a nonaffiliate" and from making any loans to affiliates. *Id.* at ¶¶ 8.2.10, 8.2.13. Whirlpool admits that it authorized the intercompany transfer of inventory in this case, but it claims that such authorization was only for cash sales. (Pl.'s Resp. to Def.'s Mot. for Summ.J. at 6.) However, it is not clear whether the transactions between Anda and Ozark involved in this case were sales, exchanges or simply sham transfers designed to divest plaintiff of its security interest in favor of Ozark and MBCI. Furthermore, the Court notes that Anda, Ozark and CCSI shared many of the same officers and directors.

MBCI argues that the intercompany transfers in this case were sales in the ordinary course of business. Whirlpool argues that they were not. Assuming that they were not, MBCI argues that the transfers were nevertheless authorized by Whirlpool. MBCI contends that Whirlpool's attempt to condition its authorization upon the payment of cash by Ozark to Anda is invalid as a matter of law.

MBCI argues that under Missouri law any attempt by a secured party to limit the scope of its authorization of the disposition of collateral is ineffective against the party who purchased the collateral from the debtor. The Court does not agree. When a debtor fails to remit proceeds from the sale of collateral to a secured party, in violation of a condition imposed by the secured party on the debtor at the time the secured party authorized the sale, Missouri courts have held that § 400.9–306(2) operates to extinguish the secured party's interest in the collateral and the secured party's only recourse is against the debtor. *See generally, Pieper v. First Nat. Bank,* 453 S.W.2d 926, 931 (Mo.1970); *Missouri v. Dahmer,* 743 S.W.2d 462, 465 (Mo.Ct.App.1987); *Charterbank Butler v. Central Cooperatives, Inc.,* 667 S.W.2d 463, 465 (Mo.Ct.App.1984).

The facts of the case at hand are distinguishable from the cases cited by MBCI. This case is not one involving an attempt by Whirlpool to condition its authorization upon the buyer's remittance of the proceeds to Whirlpool. This case is one concerning the scope of Whirlpool's authorization. The Missouri cases cited by MBCI do not hold that a secured party's attempt to authorize a type of sale constitutes a blanket authorization of any disposition of the collateral.

■ MBCI argues alternatively that even if the transfers of inventory were not authorized in this case, plaintiff cannot recover from MBCI. MBCI contends that the "proceeds" to which plaintiff would have a right under § 400.9–306 encompass only those proceeds received by the debtor after an unauthorized sale. That is not the law in Missouri. An action for conversion can lie against any transferee who receives the identifiable proceeds of the unauthorized sale of goods subject to a perfected security interest. *Fricke,* 778 S.W.2d at 833. Through that action, the secured party may recover the collateral *or* the proceeds if the transferee no longer has possession of the collateral. *ITT Indus. Credit Co. v. H & K Mach. Serv. Co.,* 525 F.Supp. 170, 172–73 (E.D.Mo.1981) (cited by *Fricke,* 778 S.W.2d at 833.)

■ MBCI also urges that this Court at least grant partial summary judgment in its favor on plaintiff's request for punitive damages. Punitive damages are allowed in Missouri for conversion if the fact finder specifically finds that "the conduct of the convertor was outrageous because of his evil motive or reckless indifference to the rights of others." *Dayton Constr., Inc. v. Meinhardt,* 882 S.W.2d 206, 209 (Mo.Ct.App.1994). The Court must view the facts in the light most favorable to the non-moving party, and plaintiff has provided the Court with deposition excerpts suggesting that MBCI accepted proceeds from Ozark's sale of cigarettes transferred from Anda even though MBCI knew that Whirlpool had a security interest in Anda's inventory and that the intercompa-

ny transfers may have been made subject to that interest. (Pl.'s Exhs. D, G, I.) This evidence creates a material factual dispute and precludes partial summary judgment in defendant MBCI's favor. Accordingly,

**IT IS HEREBY ORDERED** that defendant MBCI's motion for summary judgment (Doc. No. 42) is denied.