STATE of Missouri, Respondent,

v.

Ricky Lee FETTY, Appellant.

No. WD 33292.

Missouri Court of Appeals,
Western District.

May 10, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
June 28, 1983.

Lee M. Nation, Michael E. Curley, Nation & Curley, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before WASSERSTROM, P.J., and TUR-NAGE and CLARK, JJ.

TURNAGE, Judge.

Ricky Lee Fetty[1] was found guilty by a jury of conspiracy to commit arson in the first degree in violation of § 564.016 RSMo 1978.[2] Pursuant to the jury's recommendation, the trial judge sentenced Fetty to seven years imprisonment.

On this appeal, Fetty argues that the trial court erred in charging, trying, and convicting him for conspiracy to commit first degree arson rather than for conspiracy to commit second degree arson, in failing to submit an instruction on conspiracy to commit arson in the second degree, in submitting a verdict directing instruction on conspiracy to commit arson in the first degree, in finding the information suffi-

1. This is the name under which Fetty was charged in the information, under which he filed his pre- and post-trial motions, and under which the jury's verdict was returned. However, the trial court's judgment and sentence were entered in the name of Ricky L. Fetty, and

Fetty has brought his appeal in the name of Richard Fetty.

2. All section references are to Missouri Revised Statutes, 1978.

cient to charge him with first degree arson, in naming an overt act in the instructions different from the overt act named in the information, and in refusing to acquit him on the ground that there was insufficient evidence of an overt act or an agreement necessary to make a submissible case of conspiracy. Affirmed.

Patrick Fetty, the brother of Ricky Lee Fetty, testified that shortly before midnight on the night of September 29, 1980, he returned from work to his mobile home, where his roommate was awaiting him. He went to sleep a short time thereafter, and was awakened by the barking of his dog. Patrick looked out of the window and, seeing nothing, went back to sleep. When the dog's barking woke him again a short time later, Patrick took a flashlight and a pistol and went outside to investigate.

Upon stepping outside, Patrick saw what appeared to be a garbage can filled with diesel fuel and a pail filled with gasoline, both of which were standing at the corner of his trailer. He also saw a silhouette of the head and shoulders of a man who appeared to be looking at Patrick's door from around the corner of the trailer. The man ran up the trailer's driveway, and when he refused to heed Patrick's yelled commands that he stop, Patrick fired two shots over the man's head. Patrick saw the man enter a small compact car and drive off in it. Patrick stated that this man was Dennis Kerns.

Michele Pritchett, who had been employed by Ricky Lee Fetty and had also lived in his house, testified that she was hospitalized on September 29, 1980. Pritchett testified that on that date, Ricky Lee Fetty called her hospital room and asked her if he could borrow the keys to her red Toyota. He sent David Wolfenbarger to Pritchett's room that afternoon to get the keys.

Pritchett further testified that on the evening of September 27, 1980, she, Ralene Samuels, Dennis Kerns, and Darrel Wolfenbarger had all been talking at Ricky Lee ·Fetty's home. At that time she heard Ricky Lee Fetty ask Dennis Kerns if he would like to make $200 by burning down Patrick Fetty's trailer. Pritchett never heard an acceptance of that offer.

Ralene Samuels testified that she had been at Ricky Lee Fetty's house on the afternoon of September 29, 1980. She left there with David Wolfenbarger and Dennis Kerns in Ricky Lee Fetty's jeep, and they proceeded to a nearby gas station. Samuels testified that at the station, Kerns purchased gas with money given to him by Ricky Lee Fetty. The gas was put into a silver pail, and it was taken to the living room of a trailer occupied by David Wolfenbarger and his brothers, Darrel and Robert. Samuels heard Ricky Lee Fetty ask Dennis Kerns to do something to Patrick Fetty's trailer and heard them say they were going to torch it with gasoline.

Samuels testified that later that evening she, Darrel Wolfenbarger, and Dennis Kerns had gone riding around in Michele Pritchett's red Toyota. During the course of that ride, Samuels remembered one of the men's mentioning something about going by Patrick Fetty's trailer. The three then stopped off at Ricky Lee Fetty's trailer, and returned Samuels to the Wolfenbargers' trailer at about 1:00 or 1:30 a.m.

Samuels testified that the three of them had been drinking quite heavily that night, and that she had gone to bed immediately upon returning to the Wolfenbargers' trailer. She was later awakened by the hollering of Darrel Wolfenbarger from outside the trailer. Wolfenbarger entered the trailer carrying Dennis Kerns, whom he placed on the trailer's living room couch. Shortly thereafter, Kerns' parents and the police arrived at the trailer. Kerns died sometime after this. The clear inference is that Kerns died from gunshot wounds.

Ricky Lee Fetty did not testify, nor did he put on any witnesses in his defense.

Fetty's primary contention on appeal is that the trial court erred in allowing him to be charged, tried, and convicted for conspiracy to commit first degree arson rather than for conspiracy to commit second degree arson. Fetty contends that in order to

show conspiracy to commit arson in the first degree, the state was required to prove that he specifically intended and agreed to burn Patrick Fetty's trailer while there was someone in or in near proximity to it. Fetty reasons that the state presented no evidence that he had conspired and intended to burn Patrick Fetty's trailer while it was occupied, and that he should not have been convicted of conspiracy to commit first degree arson merely because someone happened to be present. This contention is not supported by the law.

▇ Upon examination of the statutory elements of first degree arson and second degree arson, as set forth in §§ 569.040 and 569.050 respectively, it is clear that the fundamental distinction between the two is that only first degree arson requires that the structure be occupied. The language of § 569.040 also reveals that there need be no intent or knowledge that the structure be occupied when the arson is committed:

> A person commits the crime of arson in the first degree when he knowingly damages a building or inhabitable structure and *when any person is then present or in near proximity thereto,* by starting a fire or causing an explosion and thereby recklessly places such person in danger of death or serious physical injury. (emphasis added)

▇ Fetty admits that to constitute arson in the first degree, it is not necessary for the accused to have prior knowledge or intent that the building burned was actually occupied at the time. This principle was discussed in *State v. Aguila,* 14 Mo. 130, 132 (1851), which involved a first degree arson statute substantially similar to the one in this case:

> The [first degree arson] offense was complete without even the seeing the human being, or even the knowing that one was in the house by the defendant. His knowledge of such human being is no

ways essential. If there be a human being in the house at the time the same was set fire to, that is sufficient.

*See also* 6A C.J.S. *Arson* § 16 (1975).[3] In light of this rule, it is impossible to know whether an arson was first degree or second degree until after the fact, and this distinction is made solely by determining at that time whether or not there was someone in or in near proximity to the building when the arson occurred.

▇ The essence of the crime of conspiracy is an agreement to commit a crime. Section 564.016. *See also U.S. v. Civella,* 648 F.2d 1167, 1174[8] (8th Cir.1981), *cert. denied* 454 U.S. 867, 102 S.Ct. 330, 70 L.Ed.2d 168 (1981). The evidence shows that Fetty agreed and intended to burn a building or inhabited structure. This is the sole intent required for both first degree and second degree arson, and, as the above discussion reveals, first and second degree arson are distinguishable not on the basis of their intent requirements, but only on the basis of an after the fact assessment. Applying this standard to this case, Fetty conspired to do either first or second degree arson. The precise object of his conspiracy could be determined only after the overt act required by § 564.016.4 was committed, when it was known whether or not there was someone in or in near proximity to the trailer at the time. Because someone was in fact present in the trailer at the time, the trial court acted properly in allowing Fetty to be charged, tried, and convicted for conspiracy to commit first degree arson, and in overruling his motion for a judgment of acquittal at the conclusion of the evidence.

▇ Fetty also contends that the trial court erred in failing to submit an instruction on conspiracy to commit arson in the second degree. This contention is without merit because it is based on Fetty's erroneous interpretation of first degree arson as requiring that he have intended to burn the structure while it was occupied. In light of

---

3. This is consistent with § 562.026(2), which provides that a culpable mental state is not required if the statute defining the offense clearly is designed to dispense with the requirement of any culpable mental state as to a specific element of the offense. Section 569.040 clearly does not require any intent to burn a building when a person is present or near it.

the fact that first degree arson requires only actual occupation, in combination with the fact that there was uncontradicted evidence presented at trial that the structure was in fact occupied at the time in question, there was no basis for the jury to find Fetty guilty of conspiracy to commit second degree arson. Under § 556.046.2, the trial court was not obligated to submit an instruction on that lesser included offense absent a basis for acquittal on the charge of first degree arson and the existence of evidence to support a conviction for second degree arson.

■ Fetty next claims that the trial court erred in submitting a verdict directing instruction on conspiracy to commit arson in the first degree. Fetty's position is that the instruction in question does not properly advise the jury of the elements of conspiracy to commit first degree arson because it does not require the jury to find that Fetty conspired to have the mobile home burned while it was occupied, thereby recklessly endangering its occupants. Fetty bases this objection on his claim that the instruction in question would convict someone of conspiracy to commit first degree arson only if a person was in fact present when the overt act took place, regardless of whether or not the conspirators actually conspired to burn the structure when someone was present. In light of the previous discussion of the intent requirement for conspiracy to commit the underlying offense of first degree arson, Fetty's argument on this point is without merit.

The court faced a similar situation in *State v. Bobbitt*, 242 Mo. 273, 146 S.W. 799 (1912). There, the trial court gave an instruction regarding conspiracy to commit arson in the first degree which, like the instruction in this case, failed to require a finding that the defendant had conspired to burn the structure while it was occupied. On appeal, the supreme court held that the instruction had been proper. *Id.* 146 S.W. at 803–04. Thus, the trial court in this case was correct in submitting the verdict directing instruction on conspiracy to commit first degree arson.

Fetty next contends that the trial court erred in instructing the jury on, and in entering a conviction for, conspiracy to commit first degree arson, claiming that the information in the case was insufficient to charge the appellant with that offense. The information states that Fetty:

> ... committed the class C felony of conspiracy, punishable upon conviction under § 558.011, RSMo, in that on or about the 29th day of September, 1980, in the County of Buchanan, State of Missouri the defendant with [the] purpose of promoting and facilitating the offense of arson in the first degree, agreed with Dennis Kerns and Darrel Wolfenbarger, that one or more of them would burn a mobile home located at 816½ Riverview Drive, St. Joseph, Missouri, and that in furtherance of the conspiracy one or more of them drove to 816½ Riverview Drive, St. Joseph, Missouri, and attempted to pour gasoline in and on a mobile home at that location.

Fetty claims that because the information does not allege that he conspired to burn a structure while it was actually inhabited, it is an allegation of conspiracy to commit arson in the second degree rather than arson in the first degree.

■ Fetty's argument on this point is refuted by the fact that he was charged with conspiracy rather than with first degree arson. The information closely followed MACH–CR 18.04, the conspiracy information. Furthermore, it is well established that in an indictment or information for conspiracy to commit an offense, conspiracy is the gist of the offense, and it is not essential to allege all elements of the substantive offense which is the object of the conspiracy with the same detail that they would be alleged in an indictment or information for that substantive offense. *Galatas v. United States*, 80 F.2d 15, 17[1] (8th Cir.1935), *cert. denied* 297 U.S. 711, 56 S.Ct. 574, 80 L.Ed. 998 (1936). In light of these facts, the information in this case was sufficient to charge Fetty with conspiracy to commit first degree arson.

Fetty raises two points on appeal which do not relate to his theory that he should have been charged, tried, and convicted for conspiracy to commit second degree arson rather than for conspiracy to commit first degree arson. His first claim along these lines is that instruction 6 was erroneous because it referred to a different overt act from that alleged in the information. He argues that the overt act according to the information was attempting to pour gasoline on the structure in question, while the overt act named in the instruction was merely approaching the structure with gasoline.

Because Fetty failed to raise this alleged instructional error either at trial or in his new trial motion, he did not preserve the claimed error, and is not entitled to review as a matter of course. *State v. Murry,* 580 S.W.2d 555, 556[1] (Mo.App. 1979). In order to obtain review of the court's giving of this instruction, Fetty must demonstrate that there was plain error. *State v. Saffold,* 639 S.W.2d 243, 248[6] (Mo.App.1982). To demonstrate plain error, the party must go beyond demonstrating prejudice to show that the trial lapse so affects substantial rights as to result in manifest injustice or a miscarriage of justice if not redressed. *Id.* at [7]. This court is convinced that the variance between the wording of the information and that of the instruction is not such a variance as to result in manifest injustice of the accused. *Id.* at 249[11].

Finally, Fetty claims that the trial court erred in refusing to grant a judgment of acquittal, in that there was insufficient evidence of an overt act or an agreement necessary to make a submissible case of conspiracy pursuant to § 564.016.1. Accepting as true all of the evidence tending to support the verdict and all favorable inferences that can be drawn therefrom, there was evidence from which the jury could have found, beyond a reasonable doubt, that Ricky Lee Fetty conspired with Darrel Wolfenbarger and Dennis Kerns to burn Patrick Fetty's mobile home, and that they performed the overt acts of purchasing and transporting gasoline and diesel fuel to the corner of Patrick Fetty's trailer in furtherance of the conspiracy.

The judgment is affirmed.

All concur.