**STATE of Missouri, Respondent,**

v.

**Virgil MACE, Appellant.**

**No. 48461.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 27, 1984.

John Wabon Nichols, Kennett, for appellant.

John Munson Morris, Asst. Atty. Gen., Jefferson City, for respondent.

REINHARD, Chief Judge.

Defendant was convicted by a jury of conspiracy to commit murder, and the court sentenced him as a prior offender to fifteen years in the Department of Corrections. Defendant appeals, claiming insufficiency of the evidence. We affirm.

Defendant did not testify or present any evidence at trial. Gerald Smith, who was named in the information as defendant's co-conspirator, testified to the following facts. Defendant and Betty Clark lived in a mobile home in Bloomfield, Missouri. Smith, who had known defendant since 1979, visited defendant and Clark at their home on July 28, 1983. Clark offered Smith $50 to speak to a woman on the phone and tell her he was going to be the hired killer of the woman's husband. Smith agreed to do so. While Clark was placing the call, defendant asked Smith how much he would charge to kill someone. Smith told him $5,000, to which defendant responded, "Well, what about ten thousand?" At this point, the conversation was interrupted by Clark, and Smith talked on the phone and told the woman, Sherry Patterson, that he would "do the job". After he was paid in money and drugs for making the call, Smith left.

Before Smith met with defendant and Clark again, he was arrested for burglary. In hopes of gaining leniency on the burglary charge, Smith told the sheriff about the murder plan, and agreed to cooperate in preventing the murder in return for the sheriff's help.

Another meeting at the mobile home was arranged for August 18. On that date, a microphone and transmitter were hidden on Smith's person by a state patrol officer. Smith was then released and walked to defendant's home. Defendant, Clark, and Smith formulated a plan to kill Sherry Patterson's husband, Ronnie Patterson. Smith was to pose as a hitchhiker near Patterson's home when Patterson left for work, and after Patterson picked him up, Smith was to murder Patterson with defendant's 22 caliber pistol and make it look like a robbery. Clark told Smith that the $10,000 payment for the murder would come from life insurance policies on Patterson's life. Smith asked to test fire the gun, and was told to come back the next day to do it.

Smith returned on August 19, after the police again attached a transmitter and microphone to him. Defendant and Clark were in the living room, and Clark instructed Smith to get the gun from the bedroom. Smith retrieved a gun from the bedroom, but defendant told him he had picked up the wrong gun, and instructed him to go back and get the other gun from the other side of the bed. Smith did so, and defendant then told him to go test-fire it at a shed behind the mobile home. The gun was inaccurate and misfired when Smith tested it. Defendant told Smith that the gun could not be repaired, and that he would have to hold it to Patterson's head when he killed him. Defendant would not allow Smith to take the gun with him that day.

Smith contacted defendant again on August 22. Again, a transmitter and microphone were attached to Smith before he went to defendant's home. Further discussion took place about the murder plan.

On August 28, defendant contacted Smith for another meeting. This time Smith was not wired by police because of the short notice of the meeting. Smith went to defendant's home and again met with Clark and defendant. Defendant told Smith he had re-loaded the gun with new cartridges. Clark placed the gun next to Smith. Defendant told Smith he didn't want the gun back, and instructed Smith to lose the gun when he was finished with it. Clark told Smith when Patterson would be leaving his house the next morning. Smith said he would take care of it, and left with the gun. He then turned the gun over to

the sheriff. At trial, the recordings of the meetings were heard.

The state's amended information, Count I, charged that defendant,

in violation of Section 564.016, RSMo., committed the class B felony of conspiracy, ... in that on or about the 28th day of July, 1983, in the County of Stoddard, State of Missouri, the defendant with the purpose of promoting and facilitating the offense of capital murder, agreed with Gerald Smith, that one or more of them would murder Ronnie Dean Patterson, and that in furtherance of the conspiracy one or more of them furnished Gerald Smith with a deadly weapon.

On appeal, defendant contends the trial court erred in overruling his motion for acquittal at the close of the state's case and his motion for new trial because the evidence was insufficient in two respects. We review the evidence in the light most favorable to the state, and we will not disturb the verdict of the jury if there is substantial evidence to support it. *State v. Crews*, 585 S.W.2d 131, 136 (Mo.App.1979).

■ We first address defendant's claim that there was "insufficient evidence to sustain a conviction in that there was insufficient evidence to establish the existence of a conspiracy prior to the time that the alleged co-conspirator became a government informer." Defendant argues that when Smith became a government informer, he was no longer a co-conspirator because he lacked the requisite intent to complete the conspiracy; therefore, since Smith and defendant were the only alleged conspirators, none of the evidence of the events after that point could be used to establish the conspiracy. Defendant relies on *United States v. Moss*, 591 F.2d 428, 434 n. 8 (8th Cir.1979), for the proposition that "there can be no indictable conspiracy with a government informer who secretly intends to frustrate the conspiracy." (Citations omitted.) Thus, defendant argues, the only competent evidence of conspiracy here is that which arose from the first meeting between defendant and Smith, and this was not sufficient to convict him.

Initially we note that in *Moss*, the defendant was charged with conspiracy to kidnap in violation of 18 U.S.C. § 1201(c), which provides, "If *two or more* persons conspire to violate this section and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be punished by imprisonment for any term of years or for life." (Emphasis added.) Here, on the other hand, defendant was charged under § 564.016.1 RSMo.1978, which provides, "*A person* is guilty of conspiracy with another person or persons to commit an offense if, with the purpose of promoting or facilitating its commission *he agrees* with such other person or persons that they or one or more of them will engage in conduct which constitutes such an offense." (Emphasis added.) The language of the Missouri conspiracy statute is phrased in the singular, unlike the statute construed in *Moss*. Furthermore, the "Comment to 1973 Proposed Code," which immediately follows § 564.016 V.A.M.S. 1979, specifically states that the individual's conduct, not the group's, is determinative, and that a "conspirator cannot escape liability because the only other one ... secretly does not intend to go through with the plan."

A similar argument to defendant's was made in *State v. Hohensee*, 650 S.W.2d 268 (Mo.App.1982). There, the defendant was convicted of conspiracy to commit burglary even though the other "conspirators" were government agents who lacked the intent to burglarize. The defendant in *Hohensee* also cited *Moss*, among other cases, in support of his argument. In affirming the conspiracy conviction, the Southern District held:

It will be observed that the statute [§ 546.016.1 RSMo.1978] does not open with the language "two or more persons," but rather it defines conduct which makes "*a person*" guilty of conspiracy. Note also that the statute is in the singular when it uses the language "*he agrees* ..." Thus, the statute focuses upon the conduct of one person. The "agreeing" done by that one person must

involve another person or persons but it is sufficient that "he" alone agrees, and it is also sufficient that *he* does so "with the purpose of promoting or facilitating its commission ...." It is the purpose of the individual rather than the purpose or purposes of the pair or group of persons which is required under the statute. 650 S.W.2d at 275–76.

We adopt the reasoning in *Hohensee* and rule this point against defendant.

Defendant's second complaint is that "there was insufficient evidence to establish that defendant or a co-conspirator committed the overt act alleged in the information." Because an overt act in furtherance of the conspiracy must be alleged and proved before a person can be convicted of conspiracy, § 564.016 RSMo.1978, defendant claims his conviction cannot stand. Although defendant admits the allegations of the information are not defective, he contends the state failed to prove its allegation in the information that defendant "furnished Gerald Smith with a deadly weapon." Rather, defendant claims, the state proved only that Betty Clark gave defendant the gun, and she was not alleged to have been a conspirator.

First, we note that there is no requirement that the overt act be physical. *See United States v. Civella*, 648 F.2d 1167 (8th Cir.1981) (phone conversation held to be overt act); *United States v. Eucker*, 532 F.2d 249 (2d Cir.1976) (silence can be an overt act). In determining whether the state's evidence showed that defendant "furnished" the gun to Smith, we also note that Black's Law Dictionary (5th ed. 1979) defines the word "furnish" as follows: "To supply, provide, or equip, for accomplishment of a particular purpose..." Here, the state's evidence indicated that defendant possessed the gun and relinquished its control to Smith. At one of the meetings, defendant instructed Smith to get the gun from next to defendant's bed, and told Smith to test-fire it. Defendant reloaded the gun with newer cartridges before Smith came to get it on August 28, 1983. When asked by Smith if he wanted the gun back, defendant replied, "No, lose it." These facts were sufficient to show that defendant took part in furnishing the gun to Smith. It was not necessary that he physically give it to Smith. We rule this point against defendant. Affirmed.

DOWD, CRIST and CRANDALL, JJ., concur.