UNITED STATES of America, Appellee,

v.

Thomas RAYMOND, Appellant.

Nos. 85–1916, 85–1917.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 17, 1986.

Decided June 16, 1986.

Cornelius T. Lane, Jr., Gunn & Lane, St. Louis, Mo., for appellant Thomas Raymond.

Charles Shaw, Asst. U.S. Atty., St. Louis, Mo., for appellee United States.

Before HEANEY, ARNOLD and WOLL-MAN, Circuit Judges.

WOLLMAN, Circuit Judge.

A jury convicted Thomas Raymond on one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), and of wilfully failing to appear for trial—"bail jumping,"—in violation of 18 U.S.C. § 3146. On appeal, Raymond contends that the district court[1] erred in admitting certain evidence; denying his request for a continuance; and joining the conspiracy and bail jumping offenses for trial. He also contends that the evidence was insufficient to prove his involvement in a conspiracy. We affirm.

## I.

The events leading to the conviction of Thomas Raymond began in April of 1981 with the arrest of one Tina Lampston by the St. Louis Police Department. Undercover Detective Gregory Skinner arrested Lampston after purchasing a quarter pound of marijuana from her. Lampston informed Skinner that her source for the marijuana, whom she identified as Valente Hernandez, was located in Houston, Texas. She indicated that he was involved in the sale and distribution of large amounts of cocaine. Lampston agreed to cooperate in an investigation of Hernandez' activities. The federal Drug Enforcement Administra-tion (DEA) entered the investigation at the request of the St. Louis Police Department.

On April 23, 1981, Lampston contacted Hernandez by telephone at his residence in Houston. She introduced Skinner as a longtime friend who was interested in pur-chasing cocaine. The conversation that fol-lowed between Hernandez and Skinner was recorded. Skinner told Hernandez that he was interested in obtaining a new source of cocaine to supply him with at least eight ounces a week. Hernandez replied that he had ample supplies of good quality cocaine available to him and that he was interested in doing business. The two discussed a possible cocaine sale and agreed to meet at a later date. Over the next three days, Hernandez and Lampston engaged in a ser-ies of recorded telephone conversations in an effort to finalize the details of this sale.

On April 27, 1981, Larry Hernandez, Va-lente's brother, flew from Texas to St. Louis, where he was met at the airport by Lampston. He gave Lampston one ounce of cocaine. The two then proceeded to a South County hotel, where they met with Skinner. After inspecting the cocaine, Skinner gave Larry $2,500 cash and asked him to arrange with Valente a second sale involving one pound of cocaine. The de-tails of this sale were also confirmed through a series of recorded telephone con-versations between Lampston and Valente Hernandez.

The next day, April 28, 1981, Clarice Gar-cia, Valente's common law wife, flew from Houston to St. Louis, where she proceeded to Lampston's residence. The two had been friends for approximately 18 years. Garcia did not know that Lampston was cooperating with the St. Louis police and the DEA.

Using Lampston's telephone, Garcia placed a call to Valente at Raymond's Houston home. Raymond answered the phone, and Garcia asked to speak with Va-lente. She asked Valente about the pound of cocaine and his plans for coming to St.

---

1. The Honorable John F. Nangle, United States District Judge for the Eastern District of Missou-ri.

Louis. Valente indicated that he and Raymond were "making the packages up then" and that he would be in St. Louis the next day. This conversation was also recorded.

On April 30, 1981, Lampston informed Skinner and DEA Special Agent James McDowell that Valente had arrived in St. Louis. Skinner, Garcia and Lampston met at Lampston's residence. Skinner displayed $40,000 cash to Lampston and Garcia. In accordance with Valente's instructions, Lampston took the cash and proceeded to a location somewhere in St. Louis. From there she went to a hotel where she met with Valente, who gave her a pound of cocaine. After Lampston returned home, Skinner examined and tested the cocaine; he then placed Garcia under arrest.

Following her arrest, Garcia agreed to cooperate with the investigation, which now centered on Raymond, who was believed to be Valente's supplier of cocaine. Garcia called Raymond that same day, April 30, at his home in Houston and recorded the conversation. This conversation formed the basis of the government's case against Raymond.

Raymond was arrested in Houston on May 8, 1981, and thereafter indicted on one count of conspiracy to distribute cocaine. Also charged in the indictment were Valente Hernandez and Larry Hernandez,[2] who both entered guilty pleas. Raymond failed to appear for trial in St. Louis in July of 1981 as required by his appearance bond and was indicted on a count of wilfully failing to appear for trial.

## II.

Raymond first argues that the district court erroneously admitted evidence of an out-of-court statement that Valente Hernandez made to Clarice Garcia during the April 28, 1981, telephone conversation. Specifically, Raymond sought to exclude Hernandez' statement that he and Raymond were "making the packages up." The district court admitted this evidence on the condition that the government establish the existence of a conspiracy involving Raymond by a preponderance of evidence independent of the challenged statement. *United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir.1978); *see* Fed.R.Evid. 801(d)(2)(E). At the close of the government's case, the district court determined that such independent evidence existed.

A coconspirator's out-of-court statement is admissible against a defendant if the government establishes: "(1) That a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." *United States v. Bell*, 573 F.2d at 1043. Only the second requirement, Raymond's involvement in the conspiracy, is at issue in this case.

The independent evidence that the district court referred to in its ruling is the taped conversation of April 30, 1981, between Garcia and Raymond. When Garcia first called Raymond from Lampston's phone, this exchange took place:

RAYMOND: Yeh, where are you at?

GARCIA: I'm at Tina's.

RAYMOND: Ah, you didn't dial me direct, did you?

\*       \*       \*       \*       \*       \*

GARCIA: No. Ah yes. Why?

RAYMOND: Oh no, alright listen. Val [Valente] got a problem.

GARCIA: Huh? Yeh but uh you know that. Yeh she's [sic] definitely got a problem.

RAYMOND: Yeh I know, well now listen. Uh, you go outside to a pay phone and call me.

\*       \*       \*       \*       \*       \*

RAYMOND: Is that girl, Tina, with you?

GARCIA: Huh? Well of course.

RAYMOND: You go outside to a pay phone alone and call me back.

2. Valente Hernandez and Larry Hernandez were each charged with conspiracy to distribute cocaine and with distribution of cocaine.

Moments later Garcia called Raymond from a pay telephone:

RAYMOND: Are you in a pay station?

\* \* \* \* \* \*

GARCIA: Yeh I'm in a pay phone

RAYMOND: How come I here [sic] kids and shit in the background?

GARCIA: Huh? Their [sic] coming out of the store.

RAYMOND: Give me the number where you are at.

GARCIA: O.K.

RAYMOND: And I'll call you right back.

Raymond immediately called Garcia back and began to question her at length about the details surrounding her arrest as well as the arrest of Valente Hernandez. The transcript of their conversation reveals that Raymond implored Garcia to be honest with him warning: "Let me tell you something. If I'm done too, nobody's going to help nobody. You understand what I'm saying?" Raymond told Garcia that he believed Lampston was cooperating with the government and that "what they're trying to (do) right now is get the next guy up." He continued: "And they know you are going to contact him and that's just what you've done, by phone and I tell you there's something screwy about her (Lampston's) number." Raymond instructed Garcia to obtain as much information as she could from Lampston, and, still referring to Lampston, Raymond remarked: "I hope you didn't say you were calling Val's boss." The colloquy continued:

GARCIA: No, no I didn't. I didn't say nothing. I just said I had to go get some cigarettes.

RAYMOND: No but I'm talking about when ah when you made a call to me last night or this morning.

\* \* \* \* \* \*

RAYMOND: And you made one again just a little while ago when everything went down.

GARCIA: Yeh.

RAYMOND: They don't have to be real geniuses to put that together.

\* \* \* \* \* \*

RAYMOND: So, I don't get no problem, cause there's nothing here.

GARCIA: Yeh.

RAYMOND: But it still puts a little heat on me unnecessarily.

■ We agree with the district court that this evidence circumstantially implicates Raymond in the charged conspiracy. Because circumstantial evidence of a defendant's participation in a conspiracy is as "intrinsically probative as direct evidence," *United States v. Scholle,* 553 F.2d 1109, 1118 (8th Cir.1977), we conclude that the government met its burden of showing by a preponderance of the independent evidence Raymond's active involvement in a conspiracy to distribute cocaine. Accordingly, Valente Hernandez' out of court statement was admissible.

■ Raymond argues in the alternative that the taped conversation was inadmissible as an uncorroborated "extrajudicial admission," citing *United States v. Moss,* 591 F.2d 428 (8th Cir.1979). This argument fails, however, for footnote nine on page 435 of the *Moss* opinion, which Raymond refers to, reads in relevant part: "[A] *post arrest admission* must be corroborated by independent evidence." (citations omitted) (emphasis added). Here, of course, the taped conversation between Raymond and Garcia took place prior to Raymond's arrest. This court observed in *United States v. Buttorff,* 572 F.2d 619, 626 (8th Cir. 1978), that "[e]xtrajudicial admissions and confessions to nonlaw enforcement persons are admissible when they are 'freely and voluntarily made, without threat or inducement, and without taint of illegality in their procurement \* \* \*.'" Accordingly, the taped conversation was admissible, without corroboration, as an admission under Rule 801(d)(2)(A) of the Federal Rules of Evidence. *See United States v. Piatt,* 679 F.2d 1228, 1232 (8th Cir.1982); *United States v. Porter,* 544 F.2d 936, 939 (8th Cir.1976).

■ Raymond also challenges the sufficiency of the evidence, arguing that the government failed to establish that he agreed to commit a crime. An agreement to commit an illegal act is one of three

elements the government must prove in a conspiracy case. *United States v. Michaels,* 726 F.2d 1307, 1310–11 (8th Cir. 1984).[3] The agreement can be established by circumstantial evidence and need show "no more than a tacit understanding among the participants." *United States v. American Grain & Related Industries,* 763 F.2d 312, 315 (8th Cir.1985). To be sure, "mere knowledge of an illegal act or association with an individual engaged in illegal conduct is not enough." *Id.* But the evidence against Raymond, when viewed in a light most favorable to the jury verdict, *United States v. Michaels,* 726 F.2d at 1311, was sufficient to establish that his involvement in the conspiracy went beyond mere knowledge. The April 30 phone conversation between Raymond and Garcia, together with Hernandez' statement to Garcia that he and Raymond were preparing the packages, gives rise to a strong inference that Raymond knowingly and actively participated in a conspiracy with Valente Hernandez to distribute cocaine.

We have considered the other claims of error raised by Raymond and conclude that they are without merit.

The judgment is affirmed.

Heaney, Circuit Judge, dissented and filed opinion.

---

**3.** The government must also show that the objective of the agreement was to violate the law and that an act in furtherance of the conspiracy was committed by at least one of those in agreement. *Michaels,* 726 F.2d at 1310–11.