**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Michael WELTY, Defendant-Appellant.**

No. 14566.

Missouri Court of Appeals,
Southern District,
En Banc.

April 10, 1987.

Motion for Rehearing and to Transfer Denied and Overruled May 1, 1987.

Application to Transfer Denied June 16, 1987.

Charles M. Shaw, Shaw, Howlett & Schwartz, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Kevin B. Behrndt, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PER CURIAM.

Defendant Michael Welty was convicted, following a jury trial, of conspiracy to commit the offense of sale of marijuana. He appeals from the judgment of that conviction sentencing him to seven years' imprisonment. We affirm.

Defendant and his friend, one Taylor, had been solicited by another acquaintance, Howell, to provide funding for the purchase of a large quantity of marijuana. Howell had been contacted about some marijuana which would be available by an individual who was in fact an undercover informant working for the Federal Drug Enforcement Administration. The informant acted as a messenger for a federal narcotics agent who was posing as the actual seller.

Defendant and Taylor were able to raise "[c]lose to $7,000," with $3,000 furnished by Taylor and the remainder put up by Welty. With this, after it was determined the seller would "break the bale," or permit the purchase of less than a packaged

quantity, Howell was to buy "[a]round 23 pounds." Howell delivered the money to the narcotics agent while defendant waited in a nearby truck. After the money was counted, Howell and the defendant were arrested. Taylor, who had adjourned to a lounge in the area to await the completion of the transaction, was also soon arrested. There was no marijuana.

During the trial, the agent, who had extensive experience in the drug enforcement field, testified over objection that five marijuana cigarettes could be made from a gram and that there are 453 grams to a pound. This would indicate that 2,265 cigarettes could be made from a pound and that 23 pounds of marijuana could produce over 52,000 marijuana cigarettes. He also testified to the relatively small numbers of cigarettes that even a heavy marijuana user could consume individually before the product got "dried up and stale."

Defendant's first point is that the evidence failed to establish the charge of a conspiracy to *sell* marijuana, but at most only a plan and agreement to purchase.

■ The essence of this argument lies in the fact that no testimony expressly stated an agreement or intention relative to disposing of the marijuana once it was obtained. In the absence of actual possession, it is said that the matter never got beyond a conspiracy to possess the marijuana, particularly in view of the fact there is in Missouri no statutory offense in the nature of possession with intent to sell. Thus, as we understand it, the events are urged to be so attenuated from the object crime of the charged conspiracy that there can be no finding of an agreement to commit that crime.[1] We believe, however, that a proper understanding of the conspiracy statute, as applied to the facts of this case, demonstrates the lack of merit in the sufficiency argument. In reviewing this point, we are, of course, guided by the familiar principle that the evidence is viewed in the light most favorable to the state, giving the state the benefit of all reasonable inferences based on the evidence, and ignoring evidence and inferences not supportive of the verdict. *State v. Guinan,* 665 S.W.2d 325, 327 (Mo. banc 1984), cert. denied, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984); *State v. Neal,* 685 S.W.2d 271 (Mo.App. 1985).

Conspiracy is defined by § 564.016.1, RSMo 1978, as follows:

> A person is guilty of conspiracy with another person or persons to commit an offense if, with the purpose of promoting or facilitating its commission he agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such offense.[2]

The adoption of § 564.016 as a part of the Criminal Code of Missouri represents a major reformation of the law of conspiracy. The statute is drawn from § 5.03 of the Model Penal Code. In construing and applying § 564.016, it must be presumed the General Assembly intended to adopt the interpretation of that section contained in the Comments to the Proposed Criminal Code, October, 1973, and the Comments, insofar as applicable, to § 5.03 of the Model Penal Code. *John Deere Co. v. Jeff DeWitt Auction Co.,* 690 S.W.2d 511 (Mo. App.1985). Similarly, we may regard decisions in other states construing statutes of like heritage as persuasive authority. See *State ex rel. Philipp Transit Lines v. P.S.C.,* 552 S.W.2d 696 (Mo. banc 1977).

Perhaps the most significant aspect of the offense now defined by § 564.016.1 lies in the fact that a person can be guilty of conspiracy with one or more other persons to commit a particular offense if, with the requisite purpose *"he agrees* with such other person or persons *that* they or *one* or more *of them* will engage in conduct which constitutes such offense." § 564.016.1 (emphasis added). It is clear this language adopts the "unilateral theory of conspiracy." Comments to § 9.020, Proposed

---

1. Sale of marijuana was prohibited at the relevant time by § 195.020.1, RSMo 1978, as amended 1982, in conjunction with § 195.017.-2(4)(j), RSMo 1978.

2. The definition must be read with the "overt act" requirement of § 564.016.4 in mind also.

Criminal Code for Missouri; Model Penal Code Comments to § 5.03; *Garcia v. State,* 271 Ind. 510, 394 N.E.2d 106 (1979); *State v. Marian,* 62 Ohio St.2d 250, 16 Ohio Op.3d 287, 405 N.E.2d 267 (1980).

It must be noted that the Missouri Criminal Code did not go so far as to adopt § 5.03(1)(b) of the Model Penal Code. That subsection provides:

(1) *Definition of Conspiracy.* A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission he:

. . . .

(b) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

Under that subsection it is apparent an agreement to aid in merely planning the object crime meets the definition. The Missouri Committee and General Assembly may have considered that criminal responsibility for such an agreement was within the ambit of § 564.011 (attempt) when construed with § 562.041 (responsibility for conduct of another).

■ Nonetheless, the omission of § 5.03(1)(b) of the Model Penal Code does not establish that defendant did not commit the offense proscribed by § 564.016. Under the unilateral theory of conspiracy (a contradiction in terms) it is not essential that two or more persons agree that they will commit an offense. The proscribed offense is committed if a person with the purpose of promoting or facilitating the commission of an offense "agrees" with another person or persons that at least one of them will engage in conduct which constitutes such offense. § 564.016.1. Furthermore, while at least two individuals obviously must be involved when the defendant "agrees," our conspiracy statute "focuses upon the conduct of one person" regardless of the subjective intent of the other. *State v. Hohensee,* 650 S.W.2d 268 (Mo.App.1982). Accord, *State v. Mace,* 682 S.W.2d 163 (Mo.App.1984).

Under the unilateral theory as adopted in § 564.016, it is generally considered that the term "agrees" does not require an agreement in the sense of a specific contract founded upon consideration. The requirement imposed by the term "agrees" has received the following expressions.

One might suppose that the agreement necessary for conspiracy is essentially like the agreement or 'meeting of the minds' which is critical to a contract, but this is not the case. Although there continues to exist some uncertainty as to the precise meaning of the word in the context of conspiracy, it is clear that the definition in this setting is somewhat more lax than elsewhere. A mere tacit understanding will suffice, and there need not be any written statement or even a speaking of words which expressly communicates agreement.

2 LaFave & Scott, Substantive Criminal Law § 6.4(d) (1986) (footnotes omitted). "It is universally conceded that an agreement need not be express, although whether the idea of an implied agreement connotes only an unspoken, actual consensus or has broader fictional components is by no means clear." Model Penal Code § 5.03 Comment 2(c)(iv) (footnote omitted).

In the Institute's view, neither combination as distinguished from agreement nor the analogy of partnership should be included in the formal definition. If a consensus is demanded, it is clearly indicated by demanding an 'agreement,' which need not, of course, be formal or, indeed, explicit in the sense that it is put in words.

Id. Also see *United States v. Mohr,* 728 F.2d 1132 (8th Cir.1984), cert. denied, 469 U.S. 843, 105 S.Ct. 148, 83 L.Ed.2d 87 (1984).

Further, it is not required that the offense be established by direct evidence of the understanding or consensus. The clandestine nature of conspiracies usually does not permit direct evidence, and the prosecution must rely on logical inferences drawn from the course of conduct. 2 LaFave & Scott, supra, § 6.4(d). "The agreement can be established by circumstantial evidence and need show 'no more than a tacit understanding among the participants.' *United*

*States v. American Grain & Related Industries,* 763 F.2d 312, 315 (8th Cir.1985)." *United States v. Raymond,* 793 F.2d 928, 932 (8th Cir.1986).

Upon review of convictions for bilateral conspiracy to sell drugs, it has been repeatedly held that a jury can properly find an agreement to sell from the circumstances, primarily from the amount of drugs involved. *United States v. Prieskorn,* 658 F.2d 631 (8th Cir.1981); *United States v. Villarreal,* 565 F.2d 932 (5th Cir.1978), cert. denied, 439 U.S. 824, 97 S.Ct. 2181, 53 L.Ed.2d 228 (1977); *United States v. Brischetto,* 538 F.2d 208 (8th Cir.1976); *Ridgeway v. State,* 422 N.E.2d 410 (Ind.App. 1981). The same is true in regard to the analogous offense of possession of drugs with the intent to distribute or sell. "A quantity of narcotics too large to be used by the possessor alone 'justifies the conclusion that possession was for distribution rather than personal consumption.'" *United States v. Prieto-Tejas,* 779 F.2d 1098, 1101 (5th Cir.1986). In this respect, ten pounds of marijuana has been found sufficient to provide a basis for a jury to reach such a conclusion. *United States v. Murray,* 753 F.2d 612 (7th Cir.1985).

In this case, the circumstances before the jury included the following. The defendant and Taylor were frequent companions. Taylor was a "pool hustler." He had over a period of time won perhaps a net of $2,000 from Howell. The defendant often held "the bet money" for Taylor. The defendant would also bet on Taylor.

The defendant and Taylor were first told by Howell that 30 pounds of marijuana were available for purchase at $500 per pound. They wanted to buy "as much weed as they could get if it was good." However, the defendant could only supply about $4,000, and Taylor only $3,000. They had Howell inquire of the offeror (the federal agent) if he would sell less than the full bale for the money they had. An agreement was reached for the defendant and Taylor to purchase about 23 pounds for approximately $7,000. Defendant and Taylor advanced their money into a common fund which Howell carried to the agent.

Defendant was to go look at the stash of packaged "redbud" to make sure it was of suitable quality.

■ Twenty-three pounds of marijuana were to be eagerly purchased as the result of an agreement between, and the joint efforts of, the defendant and Taylor. In view of this agreement, their past association, the size of the expected purchase, and the attempt to maximize that purchase of good marijuana, the jury properly could find a bilateral conspiracy to *sell* marijuana.

■ Also, we do not believe that the fact the agreement contemplated first securing possession of the marijuana, which would be a crime itself, prevents the conviction now under attack. The essence of the crime of conspiracy is in the agreement. *State v. Fetty,* 654 S.W.2d 150 (Mo.App. 1983). Even though the agreement may, within its scope, include more than one criminal act in sequence, there is created but a single conspiracy. § 564.016.3; Model Penal Code § 5.03 Comment 3(b). The statute thus embraces the view of *Braverman v. United States,* 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942), that the agreement is the unit of conspiracy. "Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statutes punishes." *Id.,* 317 U.S. at 53, 63 S.Ct. at 101. A defendant is protected by the statute limiting the state to a single conviction for his single agreement.

In order to carry out the plan to sell, it is evident the defendant and Taylor first had to obtain the marijuana. The issue is whether the evidence supports the conspiracy charged, with its particular allegation of an object crime, and we hold that it does. There is no reason the state must allege only the first contemplated criminal act as the object crime. The fact the evidence would support that allegation does not serve to attenuate the inference the agreement extended to a subsequent object crime which itself is independently supported by the evidence.

Further, to assume, as is somewhat obliquely suggested by defendant, that Howell was making separate purchases as agent for Taylor and defendant does not alter the result. For example, it is an obvious inference that Taylor did not invest $3,000 to personally smoke ³⁄₇ of the marijuana, which would have run to many thousands of cigarettes, before it went stale. A jury could reasonably conclude the defendant knew Taylor would resell the marijuana and acted with the "consensus" or "tacit understanding" Taylor would do so. This is a sufficient basis for a unilateral conspiracy.

However, in considering the sufficiency of the evidence on the premise Taylor purchased ³⁄₇ of the marijuana, it must be observed that § 564.016 requires that the defendant have acted with the purpose of promoting or facilitating the sale of marijuana by Taylor. The same considerations as have been mentioned before apply here. "The decisions are in conflict although many of those requiring purpose properly emphasize that it can be inferred from such circumstances as, for example, quantity sales, the seller's initiative or encouragement, continuity of the relationship, and the contraband nature of the materials sold." Model Penal Code § 5.03 Comment 2(c)(i) (footnotes omitted). In this case the defendant, with knowledge that Taylor was going to sell all or part of the marijuana, agreed to and did advance almost $4,000 to break the bale. A jury could find that the defendant did so with the purpose of facilitating the sale of marijuana by Taylor. That being so, it is not necessary to discuss the sufficiency of the evidence on the companion assumption that ⁴⁄₇ of the marijuana was separately purchased by the defendant. The evidence was sufficient to support the conviction.

Defendant next complains that it was error to permit the federal agent to testify to the amount of marijuana Howell was attempting to purchase. The basis for the complaint is a general allegation that the testimony lacked relevance and materiality, along with the more specific charges that there was no conspiracy for resale proved and that such evidence allowed the jury to speculate that the marijuana would in fact be resold or distributed.

As we have noted, however, the agreement on the part of defendant that one or more of the buyers would resell the marijuana was proved up in part by the sheer magnitude of the expected purchase. Again, we note that there is no requirement that the agreement to commit the object crime of the conspiracy be directly proved when the most relevant, and indeed the only, evidence available is circumstantial. *State v. Baldwin,* 358 S.W.2d 18 (Mo. 1962). The evidence was therefore quite relevant and not erroneously admitted.

In effect, the argument portion of the brief under this point goes on to suggest that a merely proposed amount of non-existent marijuana renders the evidence insufficient and allows the jury to speculate improperly. We have previously addressed the sufficiency of the evidence. Furthermore, to the extent the contrary is asserted, we know of no requirement that the object crime be necessarily possible of fulfillment. See 2 LaFave & Scott, supra, § 6.5(b). If, in fact, an actual quantity of marijuana had been produced for and possessed by the expectant buyers, it would neither have added to nor detracted from the reasonable inference that defendant agreed that marijuana would be sold.

Defendant's third point concerns the verdict-directing instruction and presents, in part, yet another assertion that the evidence failed to show an agreement to sell to ultimate purchasers. That will not be addressed again.

The point also objects to the inclusion of words which departed "even from the original information amended at the close of all the evidence." There is no indication in the record before us that the information was amended at that point. The true nature of defendant's complaint is clouded, but it is stated that the instruction, in submitting that defendant agreed that one or more of the group "would commit the offense of sale of marijuana to ultimate users," allows the jury to convict by regarding one of the

purchasers as an ultimate user.[3] In other words, the claimed error is that the proposed sale to defendant and Taylor through Howell could have been taken by the jury as the object of the conspiracy without requiring a finding that defendant agreed to the future sale of the expected marijuana.

It is clear from an examination of the record that the words at issue were added to the verdict director to avoid the suggestion that the sale to defendant and Taylor was the object crime. The prosecution expressly stated, in a bench conference after resting its case, that the state's theory of guilt was only a plan to sell to ultimate users. Earlier, the court had stated that was the very reason it had allowed the evidence as to quantity and the number of cigarettes available from that quantity.

■ We see nothing in the instruction which would lead the jury to take the path to conviction which defendant fears. To the contrary, it plainly calls attention to a plan of secondary sale. The instruction submits that in pursuance of the agreement by defendant to commit "that offense" (referring to the sale to ultimate users) Howell met with the agent and "offered to purchase more than 20 pounds of marijuana." In context, it is clear that the initial proposed sale was not to be confused with the sale to ultimate users. The point is without merit.

Next, defendant assigns error in allowing certain tape-recorded conversations between Howell and the informant, and between Howell and the federal agent, to be introduced and heard by the jury. The recordings were made without the knowledge of Howell during some preliminary encounters and at the time the purchase was to occur. The officer who prepared three recordings from the transmitter carried by the agent testified. The agent, who himself was responsible for recording the telephone call the informant placed to Howell, testified about the preparation of that tape. The agent presented an account of

all the events leading up to the arrest of the participants, and the sound recordings were played for the jury at the appropriate places during this account. Howell had earlier given extensive testimony about those events and of his involvement with Taylor and defendant to raise needed money.

It is argued that the recordings merely corroborated the testimony of state witnesses to the contents of the respective conversations, and allowed the same matter to be placed twice before the jury. Alternatively, it is contended that the recordings were hearsay in the absence of a conspiracy inasmuch as they "did not contain the voice of the defendant."

■ Initially, we note that both the issues of control of cumulative evidence and admission of tape recordings are generally committed to the reasonable discretion of the trial court. *State v. Dunavant*, 674 S.W.2d 685 (Mo.App.1984); *State v. Radford*, 646 S.W.2d 366 (Mo.App.1982). The state, especially in view of its heavy burden, should not be unduly limited in the amount of evidence it adduces, even if cumulative. *State v. Evans*, 406 S.W.2d 612 (Mo.1966). We have applied this principle to the case of sound recordings. *State v. Mahaffey*, 676 S.W.2d 20 (Mo.App.1984). There, we also noted that recordings are normally to be considered as superior to human memory as evidence of the contents of a conversation. When relevant events are memorialized by a recording, then the recording itself is obviously the best evidence of its own contents. *Id.* at 23. See McCormick on Evidence, §§ 232–233 (Lawyer's ed. 1984). In effect, the state was showing important events in the development of the conspiracy which happened to be conversations. We believe the trial court was well within its permissible discretion in allowing the evidence as against this objection.

In the alternative point as stated, defendant assumes again that no conspiracy was shown, and apparently attacks the record-

---

**3.** It is noted that MAI–CR 2d 18.04.1 includes the advice to specify the object crime with the "name of a specific offense and its object, such as ... 'selling heroin to ultimate users'...." The court could not have been more attentive to that advice.

ings because he was not present at the conversations. He concedes the rule that prior declarations of co-conspirators to a party on trial, made in furtherance of the object of the unlawful combination, are, on certain conditions, admissible against that party. *State v. Anding,* 689 S.W.2d 745 (Mo.App.1985); *State v. Sanner,* 655 S.W.2d 868 (Mo.App.1983). Where the rule applies, it becomes unimportant that the defendant was not present. *State v. Yingst,* 651 S.W.2d 641 (Mo.App.1983). Thus, the only condition for admissibility questioned here is the existence of a conspiracy shown other than by the statements on the recordings. Howell's own testimony, given in its entirety prior to the playing of the recordings, and fully describing his involvement with all the participants, along with the testimony of the agent sans the recordings, was ample for that purpose.

▪ Furthermore, Howell testified to the general nature of, and what transpired during, all the meetings and conversations recorded. He also described conversations with Taylor, who did not testify, and with defendant. No hearsay objection was made during that testimony, and Howell was thoroughly cross-examined.[4] That the recordings were only a confirmation of part of Howell's testimony, the latter received without objection and subject to cross-examination, goes far to dispel the hearsay argument. *Mash v. Missouri Pacific Railroad Co.,* 341 S.W.2d 822 (Mo.1960); *Buder v. Martin,* 657 S.W.2d 667 (Mo.App. 1983). It is difficult to see how the recordings themselves were anymore subject to objection on the ground raised than was Howell's live testimony about the extrajudicial communications.[5] There is no merit

shown in the specific alternative ground for reversal presented by the point relied on.

In his last point, defendant claims that he should not have been tried and sentenced as a "prior offender" under § 558.016, RSMo 1978, as amended 1980 and 1981, because the prior conviction was based on an uncounseled guilty plea.

In 1966, defendant was charged in Perry County with burglary. Late that year, a guilty plea was entered and the circuit court sentenced defendant. The document reflecting the judgment and sentence indicates he was not represented. The point now made asserts that a prior conviction in the absence of counsel is unconstitutional "rendering the guilty plea null and void." That assertion paints with too broad a brush. The principle that defendant would invoke states generally that a prior conviction may not be used for enhancement purposes if the individual was unrepresented, unless he waived counsel. *Baldasar v. Illinois,* 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), reh. denied, 447 U.S. 930, 100 S.Ct. 3030, 65 L.Ed.2d 1125 (1980); *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); *State v. Alberts,* 519 S.W.2d 562 (Mo.App.1975).

Here, the court was presented with a certified copy of the 1966 judgment and sentence from Perry County. See § 490.-130, RSMo 1978; *State v. Gardner,* 600 S.W.2d 614 (Mo.App.1980), cert. denied, 449 U.S. 1020, 101 S.Ct. 585, 66 L.Ed.2d 481 (1980). It plainly says that prior to entering a guilty plea, defendant was informed of his right to counsel, and was sufficiently capable and informed as to determine his need for counsel. It further states that "[t]he Defendant is financially able to employ counsel and has had a sufficient op-

---

4. Likewise, the agent told of the various meetings with objection only to the playing of the recordings.

5. The informant and agent were admittedly misstating their intention during these conversations. To the extent not offered for their declarative truth, extrajudicial statements are of course not hearsay by definition. *Still v. Travelers Indemnity Co.,* 374 S.W.2d 95 (Mo.1963). We are also aware that the prosecution in the present case urged at trial that the recorded

events were simply details in the development of the "the crime itself," and that a statement may sometimes be admissible as primary evidence as "a link in a chain of circumstantial evidence." *In re Thomasson's Estate,* 347 Mo. 748, 750, 148 S.W.2d 757, 763 (1941). We do not deem it necessary to explore these and other intricacies of hearsay in this case. For discussion of sound recordings generally as possible hearsay, see Annot., Sound Recordings—Hearsay; Best Evidence, 58 A.L.R.3d 598 (1974).

portunity to do so but has voluntarily chosen not to employ counsel."

■■■ It apparently is defendant's contention gleaned from the argument portion of his brief, that although there is a bare conclusion of voluntary waiver, a more complete record might not support the conclusion, and defendant should not have to prove the lack of waiver. However, it is not necessary to offer the entire record of a prior guilty plea proceeding, and the records offered here are sufficient to invoke application of prior offender status. *State v. Quinn*, 594 S.W.2d 599 (Mo. banc 1980). That case also notes that it cannot be assumed that portions of the record not brought forward will support the defendant on points which may be lacking in the record presented.

In *State v. Wilson*, 684 S.W.2d 544 (Mo. App.1984), we had occasion to consider a matter much like that now raised. There, it was contended that the records of prior convictions were deficient because they did not impart an express showing of waiver of counsel. We recognized that representation by counsel or waiver thereof could not be presumed from a silent record, a teaching of *Burgett v. Texas*, supra. However, we concluded that where certified copies of the judgments, *when reasonably construed*, showed defendant was advised of his right to counsel and waived same, then the record offered was both admissible and sufficient. *State v. Wilson*, supra, at 547. Likewise, the present record is not silent, and reasonably demonstrates waiver. In the absence of contravening evidence, sentencing as a prior offender was sufficiently supported.

There being no merit to any of the points raised in this appeal, the judgment on the conviction of conspiracy to sell marijuana is affirmed.

All concur except PREWITT, J., dissenting and filing dissenting opinion.

PREWITT, Judge, dissenting.

I respectfully dissent. I do not think that the evidence established beyond a reasonable doubt that there was an agreement to sell marijuana. There is an obvious difference between an *intention* to sell and an *agreement* to sell. Such an agreement is required by § 564.016.1, RSMo 1978. It states:

> **Conspiracy.**–1. A person is guilty of conspiracy with another person or persons to commit an offense if, with the purpose of promoting or facilitating its commission he agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such offense.

"The essence of the crime of conspiracy is an agreement to commit a crime." *State v. Fetty*, 654 S.W.2d 150, 153 (Mo.App. 1983). *State v. Hohensee*, 650 S.W.2d 268, 275–276 (Mo.App.1982), states that § 564.-016.1, RSMo 1978, "focuses upon the conduct of one person" and it is sufficient if that one person alone agrees to commit the offense. See also *State v. Mace*, 682 S.W.2d 163, 165–166 (Mo.App.1984). However, here there was no evidence that anyone agreed to sell marijuana.

The size of the anticipated purchase was sufficient for the jury to find that defendant and the two others agreed to purchase with the intent of one or more of them to sell. It was highly likely that selling the marijuana was the reason for their agreement to purchase it but to convict for a conspiracy to sell there must be evidence that defendant "agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such offense." The question then is whether it can be reasonably inferred from the agreement to purchase that defendant agreed that he or one or more of the others who intended to purchase would sell at least part of the marijuana.

If purchased, that all or most of the marijuana was going to be sold does not infer an agreement to do so. Perhaps there was a "conspiracy" to purchase marijuana so the purchasers could sell it, but that one or more of them may have intended to sell the marijuana does not indicate that there was any agreement to do so. The marijuana could have been divided and each have done whatever he wished with it.

Although that may have included sales of it, to do so would not require an agreement from any of them. If divided, and the evidence does not indicate whether or not it was going to be, there is nothing in the evidence from which it might be inferred that one of the prospective purchasers would have gone counter to any agreement had he, for whatever reason, not sold it. It is not a reasonable or necessary inference that by agreeing to purchase the marijuana there was also an agreement to sell it.

Although it may be a fair inference that defendant or the others intended to sell, there was insufficient evidence that defendant ever *agreed* that he or they would do so. Absent such an agreement, under § 564.016.1 there is no conspiracy. For that reason I would reverse the judgment.